Jane DOE, Plaintiff,

v.

UNITED STATES CIVIL SERVICE COMMISSION; Alan Campbell, Individually and as Chairman; Donald J. Biglin, Individually and as Assistant Executive Director for Freedom of Information and Privacy; Robert J. Drummond, Individually and as Director, Bureau of Personnel Investigations, United States Civil Service Commission, Defendants.

No. 78 Civ. 131 (CHT).

United States District Court,
S. D. New York.

Jan. 16, 1980.

Jack D. Novik, Charles S. Sims, American Civil Liberties Union Foundation, New York City, for plaintiff.

Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, New York City, for defendant Civil Service Commission and defendants Biglin, Drummond and Campbell in their official and individual capacities; Mary C. Daly, Asst. U. S. Atty., New York City, of counsel.

OPINION

TENNEY, District Judge.

In this factually straightforward but legally complex case, plaintiff Jane Doe [1] seeks declaratory, injunctive, and monetary relief against the United States Civil Service Commission ("CSC") and three CSC officials for injuries allegedly sustained as a result of an authorized government investigation of Doe conducted by the CSC. The complaint alleges several statutory and constitutional claims against the agency and the three named defendants in their official, as well as individual, capacities. These claims raise some unresolved and novel issues that pit the government's need to investigate a potential high-level employee against the applicant's right to ensure that the information collected is accurate. Defendants have moved for partial summary judgment on mootness grounds and for summary judgment with respect to each of Doe's claims. They have also filed objections to a Magistrate's Order issued in this case in connection with plaintiff's discovery requests. The Court denies defendants' summary judgment motions, affirms the Magistrate's Order in part, and reverses in part.

## I. BACKGROUND

In 1974, Jane Doe applied to the President's Commission on White House Fellowships ("Fellowship Commission") for a position as a White House fellow during the 1975–1976 year. Doe was selected as one of thirty-two finalists for fourteen fellowship

---

1. The plaintiff has chosen to use the pseudonym Jane Doe to protect her identity. Documents containing the plaintiff's real name have been submitted to the Court *in camera*.

positions. At the request of the Fellowship Commission, the CSC's Bureau of Personnel Investigations conducted a full field investigation of Doe that she had authorized by executing a form entitled "Security Investigation Data for Sensitive Position." The investigation was undertaken in April 1975, and more than thirty-five people who were thought to be familiar with Doe's character and capabilities were interviewed. According to the CSC, the comments of the people interviewed were generally "favorable, if not laudatory." Defendants' Memorandum in Support of Motion for Summary Judgment at 6 ("Defendants' Memorandum I"). Two people, however, told two different CSC investigators that Doe had engaged in acts of petty theft while she was a college student. One person (April 10 Source) related specific incidents of theft and said that Doe had "a propensity to steal." Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment at 4 ("Plaintiff's Memorandum"). The other (April 14 Source) stated that she

thought Doe was "schizophrenic, a kleptomaniac" and seemed to be a "compulsive thief." *Id.* at 3. After the CSC completed its investigation, it gave its report on Doe to the Fellowship Commission. The CSC report did not evaluate Doe's qualifications or make any recommendations; it simply related the statements made by the persons interviewed.

Doe was not chosen to be a White House fellow. She filed a request under the Privacy Act, 5 U.S.C. § 552a, in July 1976, seeking access to the entire investigative file compiled by the CSC.[2] The file was released three months later; the identities of the people interviewed and any information pertaining to them was deleted. Doe subsequently requested that the allegations about stealing and kleptomania be deleted from her file on grounds that they were not accurate as required by the Privacy Act, *id.* § 552a(e)(5).[3] In support of her request for amendment of her file, pursuant to section 552a(d)(2),[4] Doe submitted letters from: (1)

2. Section 552a(d) provides, in part:

 (d) Access to records.—Each agency that maintains a system of records shall—

 (1) upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him and upon his request, a person of his own choosing to accompany him, to review the record and have a copy made of all or any portion thereof in a form comprehensible to him, except that the agency may require the individual to furnish a written statement authorizing discussion of that individual's record in the accompanying person's presence.

3. Section 552a(e)(5) provides:

 (e) Agency requirements.—Each agency that maintains a system of records shall—

 . . . . .

 (5) maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination.

4. Section 552a(d) provides, in part:

 (d) Access to records.—Each agency that maintains a system of records shall—

 . . . . .

 (2) permit the individual to request amendment of a record pertaining to him and—

 (A) not later than 10 days (excluding Saturdays, Sundays, and legal public holidays) after the date of receipt of such request, acknowledge in writing such receipt; and

 (B) promptly, either—

 (i) make any correction of any portion thereof which the individual believes is not accurate, relevant, timely, or complete; or

 (ii) inform the individual of its refusal to amend the record in accordance with his request, the reason for the refusal, the procedures established by the agency for the individual to request a review of that refusal by the head of the agency or an officer designated by the head of the agency, and the name and business address of that official;

 (3) permit the individual who disagrees with the refusal of the agency to amend his record to request a review of such refusal, and not later than 30 days (excluding Saturdays, Sundays, and legal public holidays) from the date on which the individual requests such review, complete such review and make a final determination unless, for good cause shown, the head of the agency extends such 30-day period; and if, after his review, the reviewing official also refuses to amend the record in accordance with the request, permit the individual to file with the agency a concise statement setting forth the reasons for his disagreement with the refusal of the agency, and notify the individual of the provisions for judicial review of the review-

women who lived in the college dormitory with her at the time of the alleged stealing who stated that the allegations were false; (2) members of the House Council—the governing body of the dormitory—at the time of the alleged stealing, who stated that no charges were ever made against Doe; (3) the dean of students, who had no knowledge of such charges; (4) the college attorney, who stated that "the charge is asinine"; and (5) two psychiatrists, who asserted that Doe was not a kleptomaniac. The CSC rejected Doe's request and refused to amend the report. Instead, the affidavits and letters that she had submitted were included by the CSC as a permanent part of her file.

Doe appealed the CSC decision, which was issued in a letter written by Robert J. Drummond, Jr., Director of the Bureau of Personnel Investigations, to Donald J. Biglin, the Assistant Executive Director of Freedom of Information and Privacy for the CSC. The agency denied the appeal and stated that the allegations of theft would remain in Doe's file. The references to kleptomania, however, were deleted because they amounted to a psychiatric diagnosis. The CSC refused to disclose the sources of the derogatory statements on the grounds that "the withholding of the identity of a confidential source in a background

investigation is a limitation which Congress saw fit to allow agencies to place on access requirements of both the Privacy Act, at 5 U.S.C. § 552a(k)(5),[5] and the Freedom of Information Act, at 5 U.S.C. § 552(b)(7) (d)." [6]

Doe and her attorney then met with Drummond in September 1977 to request reconsideration of the appeal decision. The CSC subsequently contacted the two sources who had provided the derogatory information to request permission to reveal their identities. Both refused. The agency also contacted one of the persons who had submitted an affidavit on Doe's behalf. Defendants' Memorandum I at 7. In November 1977, Doe was informed that after reconsideration the CSC had decided that no further amendment of her file was warranted. The CSC decision stated that "[w]e believe the testimony in Doe's file relating to stealing remains unrefuted. . . . Doe's objections to the contents of her investigative file have been made part of her record, and she has been advised of her right to file a statement of her reasons for disagreeing with our denial of her request." Letter from Donald J. Biglin, dated November 21, 1977, Exhibit H to Complaint.

In January 1978, Doe instituted this action for injunctive, declaratory, and mone-

ing official's determination under subsection (g)(1)(A) of this section;

(4) in any disclosure, containing information about which the individual has filed a statement of disagreement, occurring after the filing of the statement under paragraph (3) of this subsection, clearly note any portion of the record which is disputed and provide copies of the statement and, if the agency deems it appropriate, copies of a concise statement of the reasons of the agency for not making the amendments requested, to persons or other agencies to whom the disputed record has been disclosed; and

(5) nothing in this section shall allow an individual access to any information compiled in reasonable anticipation of a civil action or proceeding.

5. Section 552a(k)(5) provides:

(k) Specific exemptions.—The head of any agency may promulgate rules, in accordance with the requirements (including general notice) of sections 553(b)(1), (2), and (3), (c), and (e) of this title, to exempt any system of

records within the agency from subsections (c)(3), (d), (e)(1), (e)(4)(G), (H), and and (I) and (f) of this section if the system of records is—

. . . . .

(5) investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment, military service, Federal contracts, or access to classified information, but only to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or, prior to the effective date of this section, under an implied promise that the identity of the source would be held in confidence;

6. Section 552(b)(7)(D), in part, exempts from the mandatory disclosures by a government agency "the identity of a confidential source."

tary relief against the CSC and three of its officers in their official capacities: Alan Campbell, Chairman; Donald J. Biglin; and Robert J. Drummond, Jr. Doe subsequently amended the complaint to add claims against the named defendants in their individual capacities. Her complaint states five claims:

1. Plaintiff seeks a de novo determination of her request that her file be amended, pursuant to the Privacy Act, 5 U.S.C. § 552a(g)(1)(A) & (g)(2).[7]

2. Plaintiff contends that defendants violated the Privacy Act by failing to maintain accurate records on her, *id.* § 522a(g)(1)(C),[8] and that she is entitled to actual damages authorized by section 552a(g)(4).[9]

3. Plaintiff contends that defendants' including in the file derogatory and prejudicial allegations about plaintiff without first independently investigating those allegations and affording her an effective opportunity to refute them was arbitrary, capricious, and an abuse of discretion in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701–706 ("APA").

4. Plaintiff contends that entering these derogatory and prejudicial allegations into the file without an independent investigation of those allegations by the defendants did not afford plaintiff an effective opportunity to refute them, and thus violated her rights to privacy and due process of law protected by the First, Fourth, Fifth, and Ninth Amendments to the Constitution.

5. Finally, plaintiff contends that the defendants' refusal to disclose the identity of the sources making the derogatory allegations about plaintiff, while at the same time refusing to expunge those allegations, violated her right to due process of law protected by the Fifth Amendment to the Constitution.

The plaintiff initiated discovery in this action by serving a first set of interrogatories that asked for the identities of the sources who made the derogatory statements contained in her file and the names of the CSC investigators who conducted the interviews with those sources. Doe's second set of interrogatories asked for the location of three identified witnesses and the identities of any additional witnesses known to the CSC. The CSC objected to

---

7. Section 552a(g)(1) provides, in part:
(g)(1) Civil remedies.—Whenever any agency
(A) makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection;

. . . . .

the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.
Subsection (g)(2)(A) reads:
In any suit brought under the provisions of subsection (g)(1)(A) of this section, the court may order the agency to amend the individual's record in accordance with his request or in such other way as the court may direct. In such a case the court shall determine the matter de novo.

8. Section 552a(g)(1)(C) provides:
(g)(1) Civil remedies.—Whenever any agency

. . . . .

(C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual;

. . . . .

the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

9. Section 552a(g)(4) provides:
In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of—
(A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recover receive less than the sum of $1,000; and
(B) the costs of the action together with reasonable attorney fees as determined by the court.

supplying this information, and the plaintiff moved to compel the answers to these interrogatories. In a comprehensive Memorandum Order, Magistrate Sinclair ruled that Doe was entitled to all the information requested. The defendants then moved for summary judgment and filed objections to the Magistrate's order in the event their motion was denied. Several months later, a motion for partial summary judgment on grounds of mootness was made by the CSC and the named defendants in their official capacities. These motions and objections are now before the Court.

## II. MOOTNESS

The CSC has offered to grant Doe what it considers to be the "complete relief" she demanded in her complaint against the CSC and the named defendants in their official capacities. The relief sought was:

 a. A declaratory judgment and injunction ordering defendants independently to investigate, and afford plaintiff the opportunity to refute, all derogatory and flagrantly prejudicial allegations about her, and disclosing the identity of the sources of those allegations to the extent the defendants refuse to expunge such allegations;

 b. A declaratory judgment and injunction ordering defendants to amend plaintiff's records;

 c. A judgment that the United States is liable to the plaintiff for actual damages sustained in the amount of $100,000;

 d. Reasonable attorney fees and other litigation costs;

 e. Such other and further relief as this Court deems just and proper.

The settlement proposal offered by the CSC includes:

(1) deleting all references to stealing from the April 10-11 and April 14-15, 1975 reports that prompted the current action;

(2) deleting the affidavits and letters submitted to the CSC that refer to the derogatory remarks and the subsequent CSC report that resulted from CSC's efforts to verify the original investigation;

(3) informing the Fellowship Commission of these changes;

(4) promising that the April 10 and April 14 sources who provided the derogatory information will not be contacted again in the event that Doe applies for another government position and is subject to a CSC investigation;

(5) paying Doe an undetermined sum of money for actual damages, attorney's fees, and costs pursuant to the Privacy Act. Affidavit of Llewellyn Fischer, Information and Privacy Counsel of the Office of Personnel Management (successor to the CSC), sworn to February 8, 1979 ("Fischer Aff.").

The exercise of judicial power under Article III depends upon the existence of an actual case or controversy. *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1974). Chief Justice Warren's opinion for a unanimous Court in *Powell v. McCormack*, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), declared that, "[s]imply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* at 496, 89 S.Ct. at 1951. The doctrine of mootness ensures that a court will not assert jurisdiction to decide a dispute that exists only on paper and no longer represents the true state of affairs between the parties. If the harm alleged constitutes a "continuing and brooding presence," *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 122, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974), or is "capable of repetition, yet evading review," *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911), it provides "a classic justification for a conclusion of nonmootness." *Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1972). "Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave 'the defendant * * * free to return to his old ways.'" *United States v. Concentrated Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968), *quoting United States v. W. T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303

(1953). The defendant who attempts to moot a case must satisfy a "heavy burden of persuasion" that the likelihood of future violations is remote. *United States v. W. T. Grant Co., supra* at 633, 73 S.Ct. 894. The Court concludes that the defendants have neither carried this burden nor successfully extinguished all "live" issues present in the case.

### A. *Live Issues*

The defendants contend that "[a]n item-by-item comparison of the relief demanded and the relief offered by the CSC conclusively demonstrates that there is no longer extant the 'live controversy' called for in *Powell.*" Defendants' Memorandum in Support of Motion for Partial Summary Judgment at 10 ("Defendants' Memorandum II"). In response, Doe argues that not all her claims are satisfied by the CSC's proposal and important issues remain to be adjudicated. While the defendants' argument is not without appeal, the Court agrees with Doe's contentions.

Doe's Privacy Act claim seeks a statutorily authorized de novo determination of her amendment request on the grounds that the theft allegations are false and that the CSC failed to maintain its records with sufficient accuracy to assure fairness to the applicant. *See* n.7 *supra* and discussion of Privacy Act at Part III A *infra.* At first blush, the CSC's settlement proposal may appear to provide the relief requested. Yet the CSC expressly states that its offer is made "without an admission of wrongdoing," Fischer Aff. at 1, and the agency has previously declared that the theft allegations "remai[n] unrefuted." The crux of Doe's dispute with the agency has always been, and continues to be, the alleged inaccuracy of the theft allegations and unconstitutionality of CSC's investigatory procedures. The very purpose of this lawsuit is to secure an opportunity to clear her name. The CSC's offer to delete the accusations from Doe's file, without either disclaiming their validity or providing a hearing on the

issue, is not commensurate with a judicial decision that the accusations are unfounded. A court ordered amendment—based on a finding that the CSC erred in not deleting the accusations from Doe's file in the face of substantial contrary evidence—would help to vindicate the claim to innocence that Doe has energetically pursued throughout the course of her dispute with the CSC. Such an order would reveal the shaky foundation on which the accusations rest to all those who have become cognizant of the charges made against her.[10]

■ The question of potential monetary relief is another "live" issue that supports the conclusion that the case is not moot. Privacy Act damages can be awarded only if a court determines that "the agency acted in a manner which was intentional or willful" in failing to maintain its records accurately and fairly. *Id.,* 5 U.S.C. § 552a(g)(4). Therefore, a judicial finding to this effect is a prerequisite to government liability under the Act. In offering to pay an undetermined amount of damages, "as authorized by the Privacy Act," the CSC firmly rejects any admission of wrongdoing. Fischer Aff. Instead, the agency has circuitously arrived at an awkward compromise position: "the CSC will not contend that it acted in a manner other than intentional and willful" in a subsequent proceeding to determine settlement damages. Defendants' Memorandum II at 7. Furthermore, stating that the "intent and good faith of CSC investigators has nothing to do with these [damages] issues," Defendants' Reply Memorandum in Support of Motion for Partial Summary Judgment at 7 ("Reply Memorandum I"), the CSC asserts that Doe's claim "will still be subject to scrutiny and objection on such traditional grounds as excessiveness, remoteness, lack of factual support, and speculative computations." Defendants' Memorandum II at 10. The Court concludes that this offer of monetary relief is too riddled with qualifications to serve as a substitute for the relief demanded in Doe's complaint and

---

**10.** The Court would not retry the facts underlying the allegations or render a verdict on Doe's

guilt or innocence. *See* discussion at Part IV *infra.*

is likely to engender further disputes between the parties requiring judicial resolution. Accordingly, both the government's failure to acknowledge the dubious validity of the allegations and the appropriate measure of damages to be awarded in the event Doe prevails, remain viable issues in this case.

### B. Capable of Repetition, But Evading Review

 Doe's complaint seeks a declaratory judgment that the CSC investigative procedures followed in her case were unconstitutional and an illegal abuse of discretion, as well as an injunction ordering the CSC to grant her an opportunity to refute the allegations made against her. As the defendants correctly point out, the mere request for a declaratory judgment or an injunction does not transform an otherwise moot action into an active case or controversy. *Geraci v. Treuchtlinger*, 487 F.2d 590, 592 (2d Cir. 1973). And although the "public interest in having the legality of the practices settled militates against a mootness conclusion," *United States v. W. T. Grant Co., supra*, 345 U.S. at 632, 73 S.Ct. at 897, policy concerns alone cannot revive a moot action. *Becket v. Marks*, 358 F.Supp. 1180, 1184 (S.D.N.Y.1973). However, when the government conduct challenged allegedly stops affecting the challenger before the case is decided, then—apart from the question of live issues—the mootness determination may turn on whether the government's action is "capable of repetition, but evading review." *Division 580, Amalgamated Transit Union v. Central New York Transp. Auth.*, 578 F.2d 29, 32 (2d Cir. 1978), *quoting First Nat'l Bank v. Bellotti*, 435 U.S. 765, 774, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1977). As recently stated by the Supreme Court, this principle may be applied when "(1) the challenged action was in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party [will] be subjected to the same action again." *First Nat'l Bank v. Bellotti, supra*, 435 U.S. at 774, 98 S.Ct. at 1414. The Court concludes that Doe's suit satisfies these criteria.

 Doe has submitted an affidavit to the Court that indicates the opportunity for repetition of the government's challenged action. She states that (1) she intends to reapply for a White House Fellowship; (2) she would have already reapplied but for the derogatory allegations in the CSC report; and (3) she intends to apply for a high level federal position that she believes will entail another full field investigation. Affidavit of Jane Doe, sworn to February 29, 1979. In an apparently sincere attempt to prevent another episode in this troubling series of accusations and refutations, the CSC offers to remove all references to stealing from Doe's file, promises that the two sources of the derogatory information will not be contacted if another investigation is conducted, and states that the only notation in Doe's file would be an instruction to CSC investigators not to contact these two sources. The Court recognizes that a suit against a government agency may be deemed moot when the defendant takes steps to insure that the challenged government action will not be repeated. *See, e. g., Tawwab v. Metz*, 554 F.2d 22 (2d Cir. 1977) (challenge to correctional facility's visitation rules mooted by policy change embodied in official prison document); *Consumers Union v. Veterans Administration*, 436 F.2d 1363 (2d Cir. 1971) (government's concession that data did not fall within Freedom of Information Act exemption mooted action to compel disclosure); *Lamb v. Commissioner*, 390 F.2d 157 (2d Cir. 1968) (per curiam) (taxpayer's appeal mooted by government's grant of a refund plus a concession regarding subsequent tax liability). However, "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" resolving the issues before the Court. *Preiser v. Newkirk, supra*, 422 U.S. at 402, 95 S.Ct. at 2334, *quoting Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). In light of Doe's stated intentions, it is likely that she

will soon be the subject of another CSC investigation; the agency does not refute this assertion. Even if the CSC can guarantee that the two sources will not be re-contacted, it cannot insure that similar allegations of theft will not appear in Doe's file unless the CSC gives her an opportunity to disprove the allegations to the agency's satisfaction—a feat not accomplished by the submission of numerous letters and affidavits from former college students, the college dean and lawyer, and two psychiatrists.

The possibility that the accusations of theft will be made by persons other than the two sources declared off limits is a "reasonable expectation" and far from remote. First, Doe contends that one of the two sources learned of the alleged "rumor" from the other source. Gossip of this kind, truthful or otherwise, is likely to spread to other persons who believe it and will repeat it to CSC investigators. Second, as a result of Doe's attempt to refute the allegations against her, many people now know that she was accused of stealing, even if these people do not believe the allegations themselves. That mere knowledge of these rumors could be damaging to Doe is demonstrated by the CSC's description of the follow-up interview it conducted with one of the people who had submitted a letter on Doe's behalf in support of her amendment request. The CSC, attempting to justify its refusal to delete the theft allegations, stated that this individual told CSC investigators that she did recall that Doe was suspected of stealing while she was at college. Defendants' Memorandum at 8. The agency neglected to point out, however, that this individual also stated that there was no "hard evidence" linking Doe to any thefts and that she personally did not believe the allegations. CSC Report of Investigation, October 18 & 19, 1977 (submitted to the Court *in camera*).

The Commission made its final decision on the fellowship applicants shortly after the CSC's original investigative report was submitted, and Doe had no knowledge of the contents of that report. Therefore, "the challenged action was in its duration too short to be fully litigated prior to cessation or expiration." *First Nat'l Bank v. Bellotti, supra*, 435 U.S. at 774, 98 S.Ct. at 1414. If Doe applies for a government position not within the "competitive service," as she states she intends to do, the CSC investigation procedures will be the same as the first time around; Doe will not be informed of any derogatory charges made against her, and the procedures would continue to evade review.[11] The fact that she cannot conclusively prove that she would have received a fellowship but for the derogatory CSC report—although she does have credible evidence to support this claim—does not diminish the threat posed by such damaging statements.[12] Unless the CSC gives Doe a

---

11. When the CSC investigates a "competitive service" applicant, the agency will inform the applicant if it learns of any derogatory information that would disqualify the potential federal employee and will provide an opportunity for rebuttal. For applicants seeking another kind of position, such as a White House Fellowship, the CSC merely conducts the investigation on behalf of the requesting agency. Reply Memorandum I at 6. *See* discussion at Part II A *infra*.

12. Doe has obtained the deposition testimony of Commission members that was taken in connection with a sex discrimination lawsuit against the Commission brought by a female White House Fellow finalist who was not selected for a fellowship position. *Stier v. President's Commission on White House Fellowships*, Civ. No. 75–1953 (D.D.C.). Although she was not a party to that action, members of the Commission were deposed about the reasons why Doe was not chosen as a Fellow. According to Doe, "the testimony is unequivocal that [she] did not receive the appointment because of the allegations in the CSC file." Plaintiff's memorandum at 4. For example, Doe states that Commission member Elizabeth Kovachevick, a Florida Circuit Court Judge,

testified that she was "one of the advocates of [Jane Doe]" and that in the deliberations of the Commission she had ranked Doe No. 3 among the 32 finalists. Then, two other people "indicated that there was something in the full field investigation that [the members of the Commission] ought to know about" and "they asked me to take a look at the full field investigation . . . ." Thereafter "I . . . was asked to make a report to the rest of my fellow Commissioners about [the full field investigation] and I said that after

chance to refute the theft allegations, or agrees to consider them inaccurate, the charges constitute a "continuing and brooding presence" threatening her employment opportunities with the federal government.

The numerous cases cited by the defendants in which an action was declared moot because the government made a complete settlement offer, or the officials involved guaranteed that the challenged act would not recur, do not compel a similar finding of mootness in this case. Those decisions did not involve a government offer to pay damages authorized by a federal statute in the absence of a judicial finding that is a statutory prerequisite to a damages award. Although courts frequently accept a government attorney's representation that certain acts will not be repeated, *see, e. g., Jackson v. Lynn*, 165 U.S.App.D.C. 172, 506 F.2d 233 (D.C. Cir. 1974); *Cherry v. Postmaster General*, 332 F.Supp. 785 (S.D.N.Y.1971), *aff'd*, 460 F.2d 1063 (2d Cir. 1972), the authority of a CSC lawyer to consent to an award of damages against the government without the statutorily required proof of wrongful intent, as required by the statute, has not been established.

The CSC's failure to admit to any wrongdoing, justified or not, also distinguishes this case from *Consumers Union v. Veterans Administration, supra*, and *Tawwab v. Metz, supra*, relied upon by the defendants. *Consumers Union* was an action to compel the Veterans Administration to disclose 1968 records of a hearing aid testing program to the plaintiff, a non-profit corporation that evaluated consumer products. After Consumers Union was granted partial relief by a district court, both parties appealed. The Veterans Administration then amended its 1970 procedures to allow disclosure of test results and made this policy retroactive to 1968. Consumers Union therefore received all the information it sought in the district court action. The government moved to dismiss the action as

moot on the grounds that "the relief requested had been supplied by the Government, thus an order by this court to disclose the information would be pointless." 436 F.2d at 1365. The Second Circuit denied the motion because "[t]he Government's position on its cross-appeal indicated it felt the disclosure was discretionary on its part and not required by the Freedom of Information Act, creating the distinct possibility that the dispute which generated the present action would recur." *Id.* Subsequently, at oral argument, the government conceded that the test results were not within any of the Act's exemptions and that no public interest rationale justified withholding the information. This concession satisfied the Second Circuit that injunctive relief ordering the test results produced was unnecessary because it was "quite clear" that the government would not rely again on the Act's exemptions to resist disclosure, and the appeal was dismissed as moot.

Similarly, in *Tawwab*, a suit challenging a correctional facility's attorney visitation policy was dismissed as moot by the Second Circuit because the allegedly unlawful policy was changed before the case was heard, and this change was "embodied in an official prison document" demonstrating that it was "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." 554 F.2d at 24, *quoting United States v. Concentrated Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968). Such a guarantee is lacking in the case at bar because the defendants do not concede that the theft accusations are false or that the CSC procedure unfairly deprived Doe of an opportunity to refute the accusations and should not be followed in the future if these charges are made again. *Cf. Seibert v. Sperry Rand Corp.*, 586 F.2d 949 (2d Cir. 1978) (suit challenging election of corporate

having read it that I would voluntarily withdraw my support for [Doe] for the position." *Id.* at 5. According to Doe, "[t]he testimony of other Commissioners is to the same effect." *Id.* Because Doe's true identity is revealed in

the depositions, they have not been filed with the Court. She has stated, however, that they will be submitted *in camera* if so directed by the Court. *Id.*

director not moot even though director's term had expired because plaintiff sought injunctive relief "not only to eliminate the effect of past wrongdoing, but also to prevent its recurrence").[13]

In conclusion, the defendants' motion for summary judgment on mootness grounds is denied because their proposed settlement offer does not remove all "live issues" present in the case and insure that the challenged government action will not be repeated.

## III. SUMMARY JUDGMENT MOTION

Before defendants moved for partial summary judgment on the grounds of mootness, they moved for summary judgment on the grounds that Doe's complaint failed to state a cause of action under the Privacy Act, the Administrative Procedure Act, or the Constitution. For the reasons discussed below with respect to each of these claims, defendants' motion is denied.

■■■■ Federal Rule of Civil Procedure 56(c) ("Rules") provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The court must resolve any doubts in favor of the party opposing the motion. *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978). Summary judgment is inappropriate whenever conflicting inferences can be drawn from the facts. *Robertson v. Seid-*

*man & Seidman*, 609 F.2d 583 at 591 (2d Cir. 1979). Neither a constitutional question nor an equally important non-constitutional issue should be decided on an incomplete factual basis when the nature of the case "requires the full exploration of a trial." 6 Moore's Federal Practice ¶ 56.16, at 56–668 (2d ed. 1976).

### A. *Privacy Act*

■■■■ The Privacy Act of 1974 serves to safeguard the public interest in informational privacy by delineating the duties and responsibilities of federal agencies that collect, store, and disseminate personal information about many individuals. *Smiertka v. United States Dep't of Treasury*, 447 F.Supp. 221, 224 (D.D.C.1978). The Act limits the kind of information that can be collected or disclosed and imposes a standard of quality and diligence on the maintenance of government records. Individuals can obtain access to agency records that pertain to them and can seek amendments to records thought to contain erroneous information.

■■■■ Doe alleges that the CSC failed to maintain its records about her in the manner required by the Act and seeks a de novo judicial determination of her amendment request pursuant to 5 U.S.C. § 552a(g)(1)(A) & (g)(2). Section 552a(e)(5) provides that each agency must "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness in the determination." The CSC contends that this statutory stan-

---

**13.** Defendants also rely on the Supreme Court's decision in *Preiser v. Newkirk*, 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1974), to support their mootness claim. In *Preiser*, an inmate seeking declaratory and injunctive relief challenged the constitutionality of his transfer from a medium to a maximum security correctional facility. The Court held that the case was moot because the inmate had been returned to the medium security facility and subsequently transferred to a minimum security institution. In contrast to the case at bar, no live issues remained to be litigated after the action challenged was terminated. Furthermore, the Court was satisfied that the maximum security

transfer would not adversely affect the plaintiff's future chances for parole because a notation to that effect had been placed in his file and no adverse action had been taken against him after he returned to the medium security facility. Noting that the plaintiff would be eligible for parole in less than a month, the Court stated that "[a]ny subjective fear Newkirk might entertain of being again transferred, under circumstances similar to those alleged in the complaint, or of suffering adverse consequences as a result of the 1972 transfer, is indeed remote and speculative." *Id.* at 403, 95 S.Ct. at 2335. In this case, Doe has greater reason to fear that her travail will be repeated.

dard applies to the agency responsible for making the personnel determination—in this case the Fellowship Commission—and should not be applied in evaluating the CSC's investigation of Doe. According to the defendants, "plaintiff's real quarrel is not with the CSC but with the Commission on White House Fellowships." Reply Memorandum I at 6. The CSC also contends, however, that it has been fair and its records are as accurate as is reasonably necessary because it deleted the references to kleptomania, recontacted the two sources to verify the accuracy of their derogatory statements, and included the affidavits and letters submitted by Doe in her file.

The Court is not impressed with the CSC's attempt to pass the buck to the Fellowship Commission. The CSC serves as the investigatory arm of the Fellowship Commission and should be subject to the same record keeping standards as an agency that makes its own personnel determinations. Furthermore, the CSC's restrictive reading of section 552a(e)(5) is inconsistent with other provisions in that subsection that clearly apply to any agency that collects and stores personnel information. Finally, the civil remedies provision of the Act vest jurisdiction in the district court "[w]henever any agency (A) makes a determination . . . not to amend an individual's record in accordance with his request." 5 U.S.C. § 552(g)(1)(A).

▮ The defendants' contention, valid or not, that the CSC records are both fair and accurate is not sufficient to support a motion for summary judgment. Whether the records are fair and accurate is a question to be decided in this case—a question presenting a genuine issue of fact about which the parties vehemently disagree. The Privacy Act specifically directs the Court to make a de novo determination of Doe's amendment request and these factual issues are part of that determination. Defendants' disagreement with plaintiff's view of the facts, or characterization of their conduct, does not entitle them to summary judgment as a matter of law.

▮ The defendants' motion for summary judgment on Doe's Privacy Act claim does not raise the effective date of the statute as a defense, but that issue should be addressed here. The statutory provisions establishing record keeping standards, amendment procedures, and civil remedies became effective on September 27, 1975. Pub.L. 93–579, § 8, 88 Stat. 1910 (1974). A 1975 amendment to the Act provides that no civil action is authorized to recover for an injury sustained as a result of an agency report disclosure prior to that date. Pub.L. 94–183, 89 Stat. 1057 (1975). The CSC investigation of Doe, and the dissemination of the report to the Fellowship Commission, occurred before September 27, 1975. The derogatory allegations were recorded in CSC reports dated April 1975 and, according to Doe, this information was released to the Commission in May 1975. Doe's Privacy Act claim does, however, fall within the effective date of the statute. First, she seeks de novo review of her March 1977 amendment request. Second, Doe contends that the agency continued to violate the Act's record keeping standards after September 1975. Accordingly, she does not rest her claim solely on the injury allegedly sustained as a result of the pre-effective date disclosure to the Fellowship Commission.

### B. Administrative Procedure Act

▮ Doe alleges that "defendants' actions, entering derogatory and flagrantly prejudicial allegations . . . into [her] file without independently investigating, and affording [Doe] an opportunity to refute those allegations was arbitrary, capricious, and an abuse of discretion [and] violated her rights to privacy and due process of law protected by the First, Fourth, Fifth and Ninth Amendments to the Constitution." Plaintiff's Amended Complaint at ¶¶ 11 & 31. Section 702 of the APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is enti-

tled to judicial review thereof." [14] The invasion of a protected right constitutes a legal wrong within the meaning of this section. *Pennsylvania R.R. v. Dillon,* 118 U.S.App.D.C. 257, 259, 335 F.2d 292, 294 (D.C.Cir.), *cert. denied,* 379 U.S. 945, 85 S.Ct. 437, 13 L.Ed.2d 543 (1964). A court reviewing administrative action is directed, in part, to:

> (1) compel agency action unlawfully withheld or unreasonably delayed; and
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> > (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> >
> > (B) contrary to constitutional right, power, privilege, or immunity;
> >
> > (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> >
> > (D) without observance of procedure required by law.

The APA thus authorizes both injunctive and declaratory relief, *see Abbott Laboratories v. Gardner,* 387 U.S. 136, 148, 155, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), against both arbitrary and unconstitutional administrative actions. The defendants contend, however, that this Court lacks jurisdiction to entertain Doe's APA claims. All the parties agree that the Supreme Court's decision in *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), is critical to this jurisdictional determination.

The plaintiff in *Califano* sought judicial review of a final decision of the Social Security Administration refusing to reopen his initial application for disability benefits that had been denied several years earlier. Section 205(h) of the Social Security Act, 42 U.S.C. § 405(h), precludes judicial review of the Secretary's final decision on a claim and states that no action seeking recovery may be brought pursuant to 28 U.S.C. section 1331. The district court dismissed the claim for lack of jurisdiction. The Seventh Circuit reversed on the grounds that section 205(h) did not limit judicial review to those methods expressly authorized by the Social Security Act itself. The court of appeals concluded that the APA contained an independent grant of subject matter jurisdiction without regard to the amount in controversy.

The Supreme Court reversed the Seventh Circuit's decision and held that "the APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." 430 U.S. at 107, 97 S.Ct. at 985. The Court stated that "the rationale for interpreting the APA as an independent jurisdictional provision" was "largely undercut" by the 1976 amendments to section 1331(a) that eliminated the amount in controversy requirement for actions brought against the United States, a federal agency, or official. Pub.L. 94–574, 90 Stat. 2721 (1976). *Id.* at 105, 97 S.Ct. 980. According to the Court, "[t]he obvious effect of this modification, subject only to preclusion-of-review statutes created or retained by Congress, is to confer jurisdiction on federal courts to review agency action, regardless of whether the APA of its own

---

**14.** The administrative decisions and conduct challenged here constitute "agency action" within the meaning of the APA; the CSC does not contend otherwise. "Agency action" is defined as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). The CSC's "final disposition" of Doe's amendment and source request was an order or denial of relief. *See id.* § 551(6), (11)(C). The agency's refusal to investigate the charges made against Doe, or to afford her a greater opportunity to refute the allegations, constitutes a denial of relief, *id.* § 551(11)(B)–(C), or failure to act. Administrative inaction frequently "has precisely the same

impact on the rights of the parties as denial of relief," *Environmental Defense Fund, Inc. v. Hardin,* 138 U.S.App.D.C. 391, 397, 428 F.2d 1093, 1099 (D.C.Cir.1970), and may become subject to judicial review. *Kixmiller v. SEC,* 160 U.S.App.D.C. 375, 378, 492 F.2d 641, 644 (D.C.Cir.1974); *cf. Fairchild, Arabatzis & Smith, Inc. v. Sackheim,* 451 F.Supp. 1181 (S.D. N.Y.1978) (Challenge to allegedly wrongful conduct in connection with commencement of administrative investigation not cognizable under the APA because "[n]owhere in the complaint is there an allegation that the Commission has taken a step that amounts to 'agency action.'")

force may serve as a jurisdictional predicate." *Id.* The Court stated that the amendment to section 1331(a) filled a "jurisdictional void" by allowing judicial review of the actions of federal officials notwithstanding the absence of the requisite jurisdictional amount. This amendment did not help the plaintiff in *Califano,* however, because the "new jurisdictional grant was qualified . . . by the retention of § 205(h) as preclusive of actions such as this that arise under the Social Security Act." *Id.* at 106, 97 S.Ct. at 985. Section 205(h) was therefore viewed as a preclusion-of-review statute limiting a court's jurisdiction under section 1331.

▮▮▮ As noted by one commentator, the *Califano* decision has "very limited significance." 1 Moore's Federal Practice ¶ 0.65(2.—1), at 700.98 n.47. "If . . . agency review actions are now all within the district court's jurisdiction except as may be precluded by preclusion-of-review statutes, normally a reading of § 702 as conferring jurisdiction would not avail the plaintiff, since 5 U.S.C. § 701(a) would render § 702 inapplicable." *Id.* Section 701(a) provides that the APA applies "except to the extent that statutes preclude judicial review; or agency action is committed to agency discretion by law." Therefore, ab-

sent a law precluding judicial review, a court could seemingly consider an APA claim pursuant to the general federal question jurisdiction provided by section 1331. *See Kennecott Copper Corp. v. Costle,* 572 F.2d 1349, 1356 (9th Cir. 1978); *Stickelman v. United States,* 563 F.2d 413, 415 n.2 (9th Cir. 1977); *Bruzzone v. Hampton,* 433 F.Supp. 92, 95 (S.D.N.Y.1977). The defendants contend that section 704 of the APA precludes judicial review in this case. That section states that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." According to the defendants, the Privacy Act provides adequate remedies for Doe's claim. The Court disagrees. The Privacy Act provides for a damage award and an expungement of government records; it does not authorize the declaratory and injunctive relief sought by Doe in connection with her APA claims.[15]

▮▮▮ The doctrine of sovereign immunity raises a thornier problem with respect to Doe's APA claims. The United States may not be sued without its consent. *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 141, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). "The general rule is that a suit is against the sovereign if 'the judgment

**15.** *See* discussion *infra.*

Defendants do not rely on § 701 of the APA, which provides that the statute does not apply "to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." They have not notified the Court of any statute directly precluding review of CSC investigatory procedures. Of course, "there is a point at which the nature of administrative decisions is such that they should be treated as committed to agency discretion because they are simply not subject to judicial evaluation." *Greater New York Hosp. Ass'n v. Mathews,* 536 F.2d 494, 498 (2d Cir. 1976). This is not, however, a case where "there is no law to apply." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971). Doe alleges that the CSC's conduct violated her due process rights and there are clearly ascertainable legal principles that can be applied to this claim. *See Santor v. Morton,* 383 F.Supp. 1265, 1266 (D.Wyo.1974) ("If the controversy merely 'involves' agency discretion, as opposed to being 'committed' to agency

discretion, the matter is reviewable."). *Cf. Greater New York Hosp. Ass'n v. Mathews, supra,* 536 F.2d at 497–98. (Because the Medicare Act does not establish factors that the Secretary must consider in determining the timing of payments, a court has no indicia by which it may evaluate the Secretary's exercise of discretion and therefore has no power of review under section 701(a)(2).) Furthermore, the action of a government agency may be subject to judicial review for arbitrariness and abuse of discretion, even though discretion may be broad. *People v. United States Dep't of Agriculture,* 138 U.S.App.D.C. 291, 297, 427 F.2d 561, 567 (D.C.Cir.1970); *Ajay Nutrition Foods, Inc. v. Food & Drug Adm.,* 378 F.Supp. 210, 213 (D.N.J.1974). As the Supreme Court has held, "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967); *accord, Rusk v. Cort,* 369 U.S. 367, 379–80, 82 S.Ct. 787, 7 L.Ed.2d 809 (1962).

sought would expend itself on the public treasury or domain, or interfere with the public administration,' *Land v. Dollar*, 330 U.S. 731, 738 [, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209] (1947), or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.' *Larson v. Domestic & Foreign [Commerce] Corp.*, [337 U.S. 682, [at] 704 [, 69 S.Ct. 1457, at 1468, 93 L.Ed. 1628] (1949)]; *Ex parte New York*, 256 U.S. 490, 502 [, 41 S.Ct. 588, 591, 65 L.Ed. 1057] (1921)." *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1962). This "general rule" is not easily applied; the Supreme Court itself has noted that it would be "a Procrustean task" to reconcile all its sovereign immunity decisions. *Malone v. Bowdoin*, 369 U.S. 643, 646, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962). To determine whether an action against a government officer is precluded by the sovereign immunity doctrine, a court must consider whether the relief sought in a suit nominally addressed to the officer is actually relief against the sovereign.[16] *Hawaii v. Gordon*, 373 U.S. 57, 58, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963).

The relief requested in the case at bar includes "a declaratory judgment and injunction ordering defendants to amend plaintiff's records [and] to investigate, and afford plaintiff the opportunity to refute, all derogatory . . . allegations about

her, and [to disclose] the identity of the sources of those allegations to the extent the defendants refuse to expunge such allegations." Doe is not merely seeking to strike the derogatory charges from her file or to compel the CSC to fulfill a statutorily mandated duty. *Cf. United States v. Briggs*, 514 F.2d 794, 808 (5th Cir. 1976) (sovereign immunity does not bar "comparatively mild" relief to plaintiffs seeking court order expunging their names as unindicted conspirators from federal grand jury indictment); *Leopold v. Civil Service Commission*, 450 F.Supp. 154, 157–78 (E.D.N.Y. 1978) (sovereign immunity does not bar government attorneys, whose positions were erroneously classified, from receiving "modest" relief, pursuant to mandamus statute, of being eligible for promotions unprejudiced by their previous wrongful classifications; court expressly "expresses no view" as to whether same relief would be available under the APA). Doe seeks "specific relief against an officer of the sovereign acting not in any individual capacity but strictly as an official." *Watson v. Blumenthal*, 586 F.2d 925, 929 (2d Cir. 1978). Absent an exception to the general rule, the sovereign immunity doctrine applies to actions seeking declaratory and injunctive relief against the CSC, *see, e. g., Hill v. United States*, 571 F.2d 1098 (9th Cir. 1978); *Gnotta v. United States*, 415 F.2d 1271 (8th

16. Doe's complaint names four defendants: the United States Civil Service Commission; Alan Campbell, Chairman; Donald J. Biglin, Assistant Executive Director for Freedom of Information and Privacy; Robert J. Drummond, Director, Bureau of Personnel Investigations, United States Civil Service Commission. The last three defendants are being sued in both their official and individual capacities. Although the CSC has not raised the point, it has been held that absent an explicit waiver of sovereign immunity, the agency is not a suable entity. "Since the Civil Service Commission is not a corporate entity which Congress has authorized to be sued, a suit involving the action of the Commission generally must be brought against the individual Commissioners as members of the United States Civil Service Commission." *Blackmar v. Guerre*, 342 U.S. 512, 515, 72 S.Ct. 410, 412, 96 L.Ed. 534 (1951); *see Gnotta v. United States*, 415 F.2d 1271 (8th Cir. 1969), *cert. denied*, 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970); *Soderman v. United*

*States Civil Serv. Comm'n*, 313 F.2d 694, 695 (9th Cir. 1962), *cert. denied*, 372 U.S. 968, 83 S.Ct. 1089, 10 L.Ed.2d 131 (1963). The individual officers representing the agency are proper defendants. *See Hampton v. Mow Sun Wong*, 426 U.S. 88, 92, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1975); *Bell v. Groak*, 371 F.2d 202, 204 (7th Cir. 1966); *Scheunemann v. United States*, 358 F.Supp. 875, 876 (N.D.Ill.1973). "[While] there may be some lack of logic in requiring that suit be brought against the officers as individuals, and not against the agency, . . . the distinction is still followed in the federal courts." *M.G. Davis & Co. v. SEC*, 252 F.Supp. 402, 403 (S.D.N.Y.1966). The exceptions to the sovereign immunity doctrine, discussed *infra*, merely describe those cases in which suits against individual officers would not be considered suits against the sovereign; they do not establish when the United States itself could be sued without its consent. *Hartke v. Federal Aviation Adm.*, 369 F.Supp. 741, 744 (E.D.N.Y. 1973).

Cir.), *cert. denied*, 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1969), or to an action to compel disclosure of allegedly secret information held by a government agency, *see, e. g., Leonhard v. Mitchell*, 473 F.2d 709 (2d Cir. 1973). *See also James v. Ambrose*, 367 F.Supp. 1321 (D.V.I.1973) (sovereign immunity bars suit against custom service where plaintiff seeks a hearing on his discharge, reinstatement, and a declaratory judgment). Although the issue is not free from doubt, the Court concludes that it lacks jurisdiction over Doe's APA claims unless they fall within a statutory waiver of immunity or one of the recognized exceptions to the sovereign immunity rule. *See Watson v. Blumenthal, supra*, 586 F.2d at 929–30.

Section 702 of the APA provides, in part, that:

An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

 The Second Circuit, however, has held that this provision does not remove the defense of sovereign immunity from APA actions seeking equitable relief that are brought pursuant to section 1331. *Watson v. Blumenthal, supra*, 586 F.2d at 932. Nor is the defense affected by the 1976 amendments to section 1331 that abolished the jurisdictional amount requirement in suits against the United States, its agencies, and employees acting in their official capacities. *Id.* As stated by the Second Circuit in *Watson* :

[T]here is no subject matter jurisdiction under the APA because the Act itself is not a grant of jurisdiction. *Califano v. Sanders*, 430 U.S. at 105, 97 S.Ct. 980, 51 L.Ed.2d 192, and the amendments also do not provide for jurisdiction but only make it clear that sovereign immunity will not be a defense in actions in which jurisdiction does exist; there is also no jurisdiction under § 1331 because of sovereign immunity, a defense that the amendments did not affect. Just as prior to the amendments to § 1331 the absence of a jurisdictional amount under the APA did not negate the requirement of a minimum amount in controversy in actions under § 1331, now the waiver of sovereign immunity under the APA does not affect the limitation of the sovereign immunity defense on jurisdiction under § 1331.[17]

*Id.* The *Watson* court held in the alternative that the Tucker Act, 28 U.S.C. § 1491, precluded the district court's jurisdiction under section 1331 in that case. Therefore, the court's discussion of the effect of section 702 on section 1331 jurisdiction was not essential to the court's ruling in the case. *Sharrock v. Harris*, 473 F.Supp. 1173, at 1176 (S.D.N.Y.1979). Nevertheless, this Court is compelled to follow the Second Circuit's clear pronouncement that neither the APA nor the section 1331 amendments negate the sovereign immunity defense in actions brought for non-monetary relief under section 1331.

 Sovereign immunity is not, however, a valid defense to Doe's claim that the CSC investigatory procedures violated her constitutional rights. The immunity doctrine does not bar a suit against federal officials when "the complaint alleges that agents of the Government have exceeded their constitutional authority while purporting to act in the name of the sovereign." *Berk v. Laird*, 429 F.2d 302, 306 (2d Cir. 1970), *cert. denied sub nom. Orlando v.*

---

**17.** The Third Circuit reached the opposite conclusion in *Jaffe v. United States*, 592 F.2d 712 (3d Cir.), *cert. denied*, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979). According to the *Jaffe* court, "Congress amended section 702 with a specific purpose of waiving sovereign immunity in equitable actions brought under § 1331." *Id.* at 718. Stating that it was "constrained to disagree with the Second Circuit," the Third Circuit therefore held that "section 702, when it applies, waives sovereign immunity in 'nonstatutory' review of agency action under section 1331." *Id.*

*Laird*, 404 U.S. 869, 92 S.Ct. 94, 30 L.Ed.2d 113 (1971); *see Dugan v. Rank, supra*, 372 U.S. at 621–22, 83 S.Ct. 999; *Larson v. Domestic & Foreign Commerce Corp., supra*, 337 U.S. at 689–91, 69 S.Ct. 1457; *Leonhard v. Mitchell, supra*, 473 F.2d at 712 n.2; *Menard v. Mitchell*, 139 U.S.App.D.C. 113, 120 n.36, 430 F.2d 486, 493 n.36 (D.C. Cir.1970).[18] Judicial review pursuant to the APA includes determining the constitutionality of an agency's conduct. 5 U.S.C. § 706(2)(B). *See Hoffman v. HUD*, 519 F.2d 1160, 1165 (5th Cir. 1975). Thus, in contrast to *Watson*, this Court has jurisdiction under section 1331 because the sovereign immunity defense is not available to defendants charged with violating the Constitution. *See Mow Sun Wong v. Hampton*, 333 F.Supp. 527, 529–30 (N.D.Cal.1971), *rev'd on other grounds*, 500 F.2d 1031 (9th Cir. 1973), *aff'd*, 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1975). The CSC's adminis-

---

**18.** This exception to the sovereign immunity doctrine was described by the Supreme Court in what has been called the "unfortunate opinion" of *Larson v. Domestic & Foreign Commerce Corp., supra. Knight v. New York*, 443 F.2d 415, 420 (2d Cir. 1971). The *Larson* Court stated that the immunity doctrine would not bar a suit against a government official in two types of cases: "where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions;" and where "the power has been conferred in form but the grant is lacking in substance because of constitutional invalidity." *Larson v. Domestic & Foreign Commerce Corp., supra*, 337 U.S. at 689–91, 69 S.Ct. at 1461–1462. The Court then complicated this relatively straightforward rule by adding a footnote stating:

> Of course, a suit may fail, as one against the sovereign, even if it is claimed that the officer being sued has acted unconstitutionally or beyond his statutory powers, if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign or the disposition of unquestionably sovereign property.

*Id.* at n.11 (citation omitted).

This footnote has provoked considerable discourse, mostly critical, among courts and commentators. *See, e. g., Knight v. New York, supra*, 443 F.2d at 420; Byse, Proposed Reforms in Federal "Nonstatutory" Judicial Review: Sovereign Immunity Indispensable Parties, Mandamus, 75 Harv.L.Rev. 1479, 1485–93 (1962); Jaffe, Suits Against Governments and Officers: Sovereign Immunity, 77 Harv.L.Rev. 1, 29–37 (1963). And the Supreme Court has reiterated and applied its initial statement of the immunity exceptions without the qualification described in the footnote. *See, e. g., Hampton v. Mow Sun Wong*, 426 U.S. 88, 93 n.5, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1975) (noting with approval district court's ruling that sovereign immunity doctrine did not bar action challenging allegedly unconstitutional CSC regulation); *Malone v. Bowdoin*, 369 U.S. 643, 648, 82 S.Ct. 980, 8 L.Ed.2d 168 (1963); *Dugan v. Rank, supra*, 372 U.S. at 620, 83 S.Ct. 999. While the Second Circuit has suggested that the *Larson* footnote may still describe the current state of the law, *Knight v. New York, supra*, 443 F.2d at 421, other circuits have concluded that the "ruling recognizing the two jurisdictional exceptions is not modified or lessened in force by the footnote," *West Coast Exploration Co. v. McKay*, 93 U.S.App.D.C. 307, 213 F.2d 582 (D.C.Cir.), *cert. denied*, 347 U.S. 989, 74 S.Ct. 850, 98 L.Ed. 1123 (1954), and that the "opinion was not intended to preclude in the name of sovereign immunity, all suits for affirmative relief," *Washington v. Udall*, 417 F.2d 1310, 1318 (9th Cir. 1969) (noting that the *Larson* footnote says that "a suit *may* fail," not that it must fail, if the relief requested for an unconstitutional or unauthorized act requires affirmative action by the sovereign). *See Penn v. United States*, 350 F.Supp. 752, 755 (N.D.Ala.1972).

The Court concludes that the *Larson* footnote's qualifying statement does not bar Doe from pursuing her claim that the CSC's conduct violated her constitutional rights. First, it is questionable whether the *Larson* footnote should be deemed controlling over the Court's other and more recent statements regarding the immunity exceptions. Second, and more importantly, it would be inappropriate to describe all the relief requested by Doe as requiring affirmative action by the government. Not only does Doe also seek a declaratory judgment, but part of the relief requested could be viewed as the cessation of unlawful conduct, not the performance of affirmative acts, a distinction that has been drawn by the Second Circuit in *Berk v. Laird, supra*, 429 F.2d at 306. *See also Cortright v. Resor*, 325 F.Supp. 797, 813 (E.D.N.Y.), *rev'd on other grounds*, 447 F.2d 245 (2d Cir. 1971), *cert. denied sub nom. Cortright v. Froehlke*, 405 U.S. 965, 92 S.Ct. 1172, 31 L.Ed.2d 240 (1972) ("sovereign immunity is not a bar if the public official is acting in excess of his authority, or his authority is unconstitutional or is being exercised in an unconstitutional manner. . . . This is true regardless of whether the plaintiff is seeking to enjoin an action of the public official, *Berk v. Laird, supra*, or seeking to compel the public official to act, *Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959).").

trative actions can therefore be reviewed by the Court to determine whether Doe's constitutional rights were violated. *Cf. Kletschka v. Driver*, 411 F.2d 436, 445 (2d Cir. 1969) (sovereign immunity does not preclude district court's jurisdiction to grant declaratory and injunctive relief under the APA if plaintiff establishes that he is statutorily entitled to a hearing).

 The *Watson* ruling that sovereign immunity precludes jurisdiction over APA claims pursuant to section 1331 prevents this Court from entertaining Doe's claim that the CSC's conduct was arbitrary and an abuse of discretion. Although the immunity defense does not bar judicial review of an officer's acts if they "conflict with the terms of his valid statutory authority," *Larson v. Domestic & Foreign Commerce Corp., supra*, 337 U.S. at 695, 69 S.Ct. at 1464, "the fact that defendant's acts were wrongful or erroneous is not sufficient to demonstrate that they are outside the scope of his authority." Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3655 (1976). *See, e. g., Larson v. Domestic & Foreign Commerce Corp., supra*, 337 U.S. at 690, 69 S.Ct. at 1461 ("A claim of error in the exercise of that power is therefore not sufficient."); *Gardner v. Harris*, 391 F.2d 885, 888 (5th Cir. 1968) ("Merely because the Superintendent may have acted wrongfully . . ., either as a matter of violation of property rights . . or as a tort . . . does not amount to circumstances fulfilling the exception that the officer must be acting beyond his statutory power."); *James v. Ambrose, supra*,

367 F.Supp. at 1324, 1326 (complaint alleging that discharge from position was "arbitrary" did not make an "affirmative allegation of any relevant statutory limitation upon any of the defendants' power or that a government official has exceeded his statutory authority" sufficient to override sovereign immunity defense). Because this claim does not fall within one of the recognized exceptions to the sovereign immunity doctrine, the Court lacks jurisdiction to hear this charge of administrative abuse. *See Faith Hosp. Serv. v. Blue Cross Hosp. Serv., Inc.*, 393 F.Supp. 601 (E.D.Mo.1975), *modified*, 537 F.2d 294 (8th Cir. 1976) (claim that HEW decisions were arbitrary and wrongful barred by sovereign immunity; claim that procedures violated plaintiff's due process rights not barred by immunity doctrine because it challenged constitutionality of official action).

## C. Constitutional Claims

Doe alleges that the defendants violated her constitutional rights of privacy and due process by entering derogatory allegations in her file without adequately investigating the matter and without affording her the opportunity to refute those charges. She also contends that the CSC deprived her of due process by refusing to disclose the identity of the sources while also refusing to expunge the allegations. Doe acknowledges that under *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), she is not entitled to monetary damages against the United States or the CSC officials in their official capacities.[19] With

---

**19.** The *Testan* Court held that government trial attorneys who sought reclassification of their civil service grade were not entitled to money damages for back pay because neither the Classification Act nor the Back Pay Act constituted a waiver of sovereign immunity for these monetary claims. The Court reiterated that the United States "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Testan, supra*, 424 U.S. at 399, 96 S.Ct. at 953, *quoting United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Stating that "[t]here is a difference between prospective reclassification . .

and retroactive reclassification resulting in money damages," the Court pointed out that prospective relief was available to the parties. *Id.* 424 U.S. at 403, 96 S.Ct. at 955.

The *Testan* decision does not disturb the rule that an action seeking non-monetary relief for the allegedly unconstitutional actions of a government official will not be barred by the sovereign immunity doctrine. *Glines v. Wade*, 586 F.2d 675, 681 (9th Cir. 1978); *J. D. Pflaumer, Inc. v. United States Dep't of Justice*, 450 F.Supp. 1125, 1132 (E.D.Pa.1978). "While that exception does apply for the purpose of allowing the court to exercise jurisdiction over the suit, it does not preclude sovereign immunity from barring the granting of monetary relief."

respect to these defendants, therefore, Doe seeks declaratory and injunctive relief for the alleged violation of her constitutional rights.

In contrast to her Privacy Act and APA claims, Doe's constitutional charges are also directed to the named defendants in their individual capacities. The motion for summary judgment made by the named defendants in their individual capacities is supported by a one sentence memorandum in which they state that they join in the motion filed on behalf of the CSC and the defendants in their official capacities. While the Court applauds this effort to conserve resources by not needlessly repeating arguments already presented, it is surprising that the individual defendants did not discuss the legal and factual issues relating solely to the personal charges made against them.[20]

The defendants' motion for summary judgment makes two distinct arguments in response to Doe's constitutional claims. First, the defendants argue, the Court should not imply a constitutional remedy à la *Bivens* because Congress has provided a statutory remedy for Doe's complaints by enacting the Privacy Act. Second, defendants contend that "there is no basis" for Doe's constitutional claims because neither the right to privacy nor due process protects the personal interests at stake in this case. The Court rejects both contentions.

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S.

388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), is the landmark case in which the Supreme Court first implied a private cause of action for damages arising out of a violation of constitutional rights by government officials. Six agents of the Federal Bureau of Narcotics conducted an illegal search of Bivens' apartment in violation of the Fourth Amendment. Bivens had no adequate remedy for the damages he suffered because the United States had not yet waived its sovereign immunity for intentional torts committed by its agents. (The Federal Tort Claims Act was subsequently amended to allow suits for claims arising out of assault, battery, and false arrest. Pub.L. 93–253, § 2, 88 Stat. 50, codified at 28 U.S.C. § 2680(h) (Supp. V 1975)). Since only federal agents had participated in the search, 42 U.S.C. § 1983, which reaches only state action, was inapplicable. Bivens was never prosecuted so there was no occasion to suppress illegally seized evidence pursuant to the exclusionary rule. Therefore, in order to redress the violation of his constitutional rights, Bivens only recourse was an action for damages based directly on the Fourth Amendment. Upholding this constitutional cause of action, the Supreme Court stated that "where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." *Id.* at 392, 91 S.Ct. at 2002, *quoting Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946).[21]

---

*De Lao v. Califano*, 560 F.2d 1384 (9th Cir. 1977); *see Mine Safety Appliances Co. v. Forrestal*, 326 U.S. 371, 374–75, 66 S.Ct. 219, 90 L.Ed. 140 (1945); *Zapata v. Smith*, 437 F.2d 1024, 1027 (5th Cir. 1971). The Court need not decide whether that exception to the exception governs this case because the plaintiff does not seek monetary damages from the defendants in their official capacities.

**20.** For example, plaintiff's claims raise questions about the "willfullness" of the defendants' allegedly unlawful conduct and the scope of their official immunity under *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

**21.** *Bivens* has been a favorite topic among legal commentators, *see, e. g.*, Dellinger, Of Rights

and Remedies: The Constitution as Sword, 85 Harv.L.Rev. 1532 (1972); Lehmann, Bivens and Its Progeny: The Scope of a Constitutional Cause of Action for Torts Committed by Government Officials, 4 Hastings Const'l L.Q. 531, and its rationale has been applied to other constitutional provisions by lower courts. *See, e. g., Dellums v. Powell*, 184 U.S.App.D.C. 275, 566 F.2d 167 (D.C.Cir.1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3147, 57 L.Ed.2d 1161 (1978) (First Amendment); *Apton v. Wilson*, 165 U.S. App.D.C. 22, ·506 F.2d 83 (D.C.Cir.1974) (Fifth Amendment); *Berlin Democratic Club v. Rumsfeld*, 410 F.Supp. 144 (D.D.C.1976) (Sixth Amendment); *Patmore v. Carlson*, 392 F.Supp. 737 (E.D.Ill.1975) (Eighth Amendment).

■ The Court agrees with defendants' assertion that "the existence of an effective and substantial federal statutory remedy for the plaintif[f] obviates the need to imply a constitutional remedy on the plaintiff['s] behalf." *Mahone v. Waddle*, 564 F.2d 1018, 1024–25 (3d Cir. 1977); *see Kostka v. Hogg*, 560 F.2d 37, 42 (1st Cir. 1977); *Neely v. Blumenthal*, 458 F.Supp. 945, 956–57 (S.D.N.Y.1978). Therefore, it is unnecessary to fashion a cause of action directly from the Constitution to the extent that the equitable relief requested against the CSC for its unconstitutional conduct would be available under the APA, pursuant to the Court's prior discussion of that statutory claim.

■ However, the Court disagrees with defendants' contention that the relief provided by the Privacy Act under the circumstances alleged in this case precludes the implication of a constitutional cause of action. Privacy Act remedies are limited to actual damages and an amendment of the agency's records. Doe seeks broader injunctive and declaratory relief against the CSC officials—an opportunity to affirmatively clear her name and a declaration of her constitutional rights with respect to the past and future actions of the CSC.[22] Furthermore, her claims relate, in part, to events that occurred before the effective date of the Privacy Act. That statute, therefore, could not determine all the legal issues and claims arising out of the series of events involved in this lawsuit. For example, the record keeping standards established by the Act did not go into effect until after the CSC investigative reports were compiled and the information was released to the Fellowship Commission. Moreover,

the Privacy Act states that "[n]othing in this section shall be construed to authorize any civil action by reason of any injury sustained as the result of a disclosure of a record prior to September 27, 1975." 5 U.S.C. § 552a(g)(5). Monetary damages, therefore, could not be awarded under the Act for any injury that resulted from the disclosure of the allegations to the Fellowship Commission.

The defendants argue that the Court could determine that the CSC's investigative technique and personnel report were improper under the Privacy Act even though the information was collected prior to the effective date of the statute. According to the defendants, if CSC procedures are found to have violated the standards now established by the Act, "then the Court in framing its judgment has the power under the Privacy Act to order CSC in subsequent investigations of the plaintiff to proceed in a different fashion." Reply Memorandum in Support of Motion for Summary Judgment at 11 ("Reply Memorandum II"). Notwithstanding the defendants' generous view of the Court's authority, the fact remains that the Act does not govern conduct that occurred before its effective date. *Meisch v. United States Army*, 435 F.Supp. 341, 344 (E.D.Mo.), aff'd, 566 F.2d 1178 (8th Cir. 1977). Although Doe has a valid Privacy Act claim for post-effective date actions, the statute does not necessarily determine all the rights and responsibilities of the parties to this lawsuit.

This case is therefore distinguishable from *Mahone v. Waddle, supra*, which is relied upon by the defendants. In *Mahone*, the Third Circuit refused to imply a cause of action for race discrimination under the

---

**22.** Although *Bivens* and *Davis v. Passman*, —— U.S. ——, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), discussed *infra*, involved claims for money damages, it is clear that injunctive relief may also be awarded for a cause of action based directly on the Constitution. *See, e. g., Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952). Although the *Davis* Court "intimate[d] no view on [the] question" whether equitable relief would be appropriate in that

case, the Court cited with approval decisions by lower courts in which a cause of action had been implied directly under the Fifth Amendment where the plaintiff sought equitable relief as well as damages. *See, e. g., Jacobson v. Tahoe Regional Planning Agency*, 566 F.2d 1353 (9th Cir. 1977), *rev'd in part, aff'd in part on other grounds sub nom. Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979); *Sullivan v. Murphy*, 156 U.S.App.D.C. 28, 478 F.2d 938 (D.C.Cir.1973).

Fourteenth Amendment because the plaintiffs stated a claim under 42 U.S.C. § 1981. The court stated that while "§ 1981 reaches only racial discrimination whereas the fourteenth amendment applies as well to other discriminatory conduct, the specific fourteenth amendment violations alleged in the instant case are racial in character and as such, are fully actionable under § 1981." *Mahone v. Waddle, supra,* 564 F.2d at 1025 n.8. Doe's constitutional claims may not, however, be "fully actionable" under the Privacy Act because they relate, in part, to events occurring prior to the statute's effective date and seek equitable relief unavailable under the Act.

■ The defendants' contention that the Privacy Act necessarily precludes a constitutional cause of action runs counter to the Second Circuit's recent decision in *Hernandez v. Lattimore,* No. 78-2098, slip op. (2d Cir. December 6, 1979). The *Hernandez* court rejected the argument that the remedies provided by the Federal Tort Claims Act, 28 U.S.C. § 2680(h), for the unconstitutional conduct of prison officials precluded a cause of action implied directly from the Eighth Amendment. Noting that the case "does not arise in the remedial void that handicapped Webster Bivens," the court stated that "[n]evertheless, it seems clear that Congress in closing that void did not intend to shut out damage actions against government officers who violate constitutionally secured rights." *Id.* at 5610. Although the legislative history of the Privacy Act does not expressly refer to the availability of other forms of relief, *cf. id.* at 5611 ("even a cursory reading of the Senate Committee report [on the Federal Tort Claims Act] demonstrates a congressional intent to provide a remedy against the federal government in addition to, but not wholly in the place of, the private cause of action created by *Bivens*"), nothing in the statute or its legislative reports indicates that it was intended as an exclusive remedy for claims arising out of administrative investigations.

■ The defendants also contend that "[r]ecognition of a direct constitutional claim would permit a plaintiff to thereby by-pass [sic] administrative review and deprive the agency of an opportunity to correct inaccuracies in its own records." Undoubtedly, the existence of a congressionally established administrative scheme to handle claims of federal rights violations may counsel against the implication of a constitutional cause of action. *Torres v. Taylor,* 456 F.Supp. 951, 954 (S.D.N.Y.1978); *see Turpin v. Mailet,* 579 F.2d 152, 167 (2d Cir. 1978), *vacated sub nom. City of West Haven v Turpin,* 439 U.S. 974, 99 S.Ct. 554, 58 L.Ed.2d 645 (1978), *modified,* 591 F.2d 426 (2d Cir. 1979) (en banc). This consideration, however, and the cases cited by the defendants to support their argument, are inapposite to the case before the Court. Defendants rely on several cases in which the Supreme Court has refused to imply a private cause of action under a statute that does not provide such a remedy. *E. g., Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Securities Investor Protection Corp. v. Barbour,* 421 U.S. 412, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975); *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,* 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974). Yet the Supreme Court has recently stated that "the question of who may enforce a statutory right is fundamentally different than the question of who may enforce a right that is protected by the Constitution." *Davis v. Passman,* 442 U.S. 228, 241, 99 S.Ct. 2264, 2274, 60 L.Ed.2d 846 (1979). Reversing the Fifth Circuit's en banc decision, the Court held that it was "error" to apply the *Cort v. Ash* criteria for implying a private statutory cause of action to a constitutional claim. *Id.* Furthermore, in *Hernandez v. Lattimore, supra,* the Second Circuit implied a constitutional remedy notwithstanding the administrative procedures established by the Federal Tort Claims Act which are comparable to the procedures prescribed in the Privacy Act. Both statutes provide that a claimant first submit a request to the appropriate agency and then bring an action in federal court if the agency does not grant relief. These procedures were followed, not bypassed, by the plaintiff in this

case. Doe is not trying to circumvent the administrative channels through which she has already passed; she seeks relief not available there.[23]

Doe's constitutional claims against the named defendants in their individual capacities bear a greater resemblance to the cause of action sanctioned in *Bivens* because she is seeking monetary damages directly from the federal officials allegedly responsible for violating her rights. The *Bivens* case is thus the starting point in determining whether Doe may pursue this claim. Unlike *Bivens*, however, Doe alleges that her rights to privacy and due process were violated by the officials. Although the Supreme Court has not yet recognized a *Bivens*-style remedy based on the constitutional right to privacy, in *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), the Court recently reaffirmed that "a cause of action may be implied directly under . . . the Due Process Clause of the Fifth Amendment." *Id.* at 242, 99 S.Ct. at 2275, *citing Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954), and *Jacobs v. United States*, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142 (1933).

The petitioner in *Davis* was hired as a deputy administrative assistant to a United States congressman who subsequently terminated her employment because although she was "able, energetic and a very hard worker," he had concluded "that it was essential that the understudy to my Administrative Assistant be a man." She then brought a sex discrimination suit alleging that the congressman's conduct violated the Fifth Amendment and demanding damages in the form of back pay. Jurisdiction was predicated on section 1331(a). On appeal to the Fifth Circuit en banc, the Circuit Court applied the criteria delineated in *Cort v.*

*Ash, supra*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), for determining whether a private cause of action should be implied from a federal statute and concluded that "no right of action may be implied from the Due Process Clause of the fifth amendment." *Davis v. Passman*, 571 F.2d 793, at 801 (5th Cir. 1978). The Supreme Court reversed the Fifth Circuit's decision. The Court employed a three-part analysis and held "first that . . . petitioner assert[ed] a constitutionally protected right; second, that petitioner ha[d] stated a cause of action which asserts this right; and third, that relief in damages constitutes an appropriate form of remedy." 442 U.S. at 234, 99 S.Ct. at 2271. This mode of analysis, and the conclusions reached, are equally applicable to the case at bar.

Doe claims that the CSC violated two of her constitutionally protected rights, privacy and due process of law, by recording and disseminating the derogatory charges made against her without affording her an opportunity to refute the allegations. The "zone of privacy" safeguarded by the Constitution embraces "the individual interest in avoiding disclosure of personal matters and . . . the interest in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599–600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977). This latter interest, which generally relates to matters of "marriage, procreation, contraception, family relationships, and child rearing and education," *Paul v. Davis*, 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1975), is not involved in this case. Doe is not challenging a substantive government regulation that restricts her personal freedom in an intimate area of her life. *Cf. Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54

---

**23.** The Second Circuit's decision in *Hernandez v. Lattimore, supra*, which was issued after this Court received defendants' memoranda in support of their summary judgment motion, undercuts the defendants' reliance on the pre-*Hernandez* case of *Torres v. Taylor*, 456 F.Supp. 951 (S.D.N.Y.1978). In *Torres*, the court held that no constitutional cause of action could be implied from the Eighth Amendment because relief for the injuries sustained by the prisoner as a result of the allegedly unconstitutional conduct of prison officials was available under the Federal Tort Claims Act. The court rejected the argument that the unavailability of punitive damages under the Act justified the implication of a *Bivens*-type remedy, *id.* at 954 n.22, and held that such a remedy would thwart "the carefully considered congressional procedures for raising claims" that is embodied in the statute. *Id.* at 955.

L.Ed.2d 618 (1977) (marriage); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (abortion). The other aspect of the privacy right—the interest in avoiding disclosure of personal matters—is more closely related to this dispute. However, in contrast to Supreme Court cases recognizing this interest, Doe's suit does not involve the public disclosure of personal, but truthful, information that is collected and stored pursuant to a statute that protects a legitimate government interest. *Cf. Whalen v. Roe, supra,* (New York statute requiring identification of patient who receives prescription for certain potentially dangerous drugs is a reasonable exercise of state's police powers and does not pose a substantial risk of disclosure of private information in light of statutory security provisions); *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974) (challenge to Bank Secrecy Act of 1970 that required financial institutions to maintain records of customers' identities and certain transactions). In describing this "nondisclosure" branch of the privacy right the Supreme Court has referred to "the right to be let alone" and to be free from "government intrusion." *Whalen v. Roe, supra,* 429 U.S. 599 n.25, 97 S.Ct. at 876 n.25, *citing Olmstead v. United States*, 277 U.S. 438, 478, 48 S.Ct. 564, 72 L.Ed. 944 (1928), and *Griswold v. Connecticut*, 381 U.S. 479, 483, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1963). The gravamen of Doe's complaint is not that the government failed to leave her alone or wrongfully intruded into her personal affairs; she authorized the investigation herself and is now challenging the agency's collection, reporting, and disclosure procedures. The Court therefore concludes that Doe's constitutional claim is more appropriately analyzed as an alleged violation of the Due Process Clause of the Fifth Amendment. *See Paul v. Davis*, 424 U.S. 693, 712–13, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Richard v. Thurston*, 424 F.2d 1281, 1283–84 (1st Cir. 1970) (freedom to wear one's hair at a particular length not protected by constitutional right to privacy but is within sphere of personal liberty established by the Due Process Clause).

▮▮▮ The Fifth Amendment prohibits the government from depriving an individual of "life, liberty, or property, without due process of law." U.S.Const. amend. V. To invoke the procedural protections of the Constitution, a party must establish that the individual interest asserted is encompassed within the "life, liberty, or property" protected by the amendment. *See Ingraham v. Wright*, 430 U.S. 651, 672, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1976). Doe relies on the liberty interest protected by the Due Process Clause. Defendants, in turn, argue that "[e]ven if the decision not to offer her a fellowship was causally related to the derogatory information in her file and even if that information was inaccurate, she has suffered no due process deprivation." Mindful that "the range of interests protected by procedural due process is not infinite," *Board of Regents v. Roth*, 408 U.S. 564, 570, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972), the Court is persuaded that Doe's constitutional claims should not be dismissed on a motion for summary judgment.

▮▮▮ The personal liberty interest that is violated when defamatory statements are conveyed by government officials has been examined in Supreme Court cases involving two basic fact patterns. The first kind of case involves a government employee who has lost his job and claims that he was not afforded a fair opportunity to refute derogatory charges or complaints made against him. When the employee has no legally cognizable property interest in continued employment, a hearing is required "if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination." *Codd v. Velger*, 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977) (per curiam); *see Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth, supra,* 408 U.S. at 573, 92 S.Ct. 2701.[24] Two prerequisites must there-

---

24. In *Board of Regents v. Roth, supra*, the Supreme Court held that the constitutional right to due process of law does not require an opportunity for a hearing prior to the nonrenewal

fore be satisfied to establish a deprivation of liberty. First, the employee must allege that the charges against him are false. *Codd v. Velger, supra,* 429 U.S. at 627–28, 97 S.Ct. 882. Because the purpose of a hearing "is solely 'to provide the person an opportunity to clear his name', . . . no hearing would afford a promise of achieving that result . . . [i]f he does not challenge the substantial truth of the material in question." *Id.* Second, the allegations must have been made public or disclosed in a manner that impairs the individual's "interest in his 'good name, reputation, honor, or integrity.'" *Bishop v. Wood, supra,* 426 U.S. at 348, 96 S.Ct. at 2079, *quoting Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); *see, e. g., Newman v. Board of Educ.,* 443 F.Supp. 994, 1010 (E.D.N.Y. 1977); *Lombard v. Board of Educ.,* 440 F.Supp. 577, 582 (E.D.N.Y.1977). This requirement prevents "stretch[ing] the concept [of due process] too far 'to suggest that a person is deprived of liberty when he simply is not rehired in one job but remains as free as before to seek another.'" *Id., quoting Board of Regents v. Roth, supra,* 408 U.S. at 575, 92 S.Ct. at 2708. It also insures, however, that an individual will not unfairly "be deprived not only of present government employment but of future opportunity for it certainly is no small injury when government employment so dominates the field of opportunity." *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 185, 71 S.Ct. 624, 655, 95 L.Ed. 817 (1951) (Jackson, J., concurring), quoted in part in *Board of Regents v. Roth, supra,* 408 U.S. at 574, 92 S.Ct. 2701.

The second kind of case concerning defamation by government officials does not involve termination of employment and more closely resembles a common law action for slander or libel. *See Paul v. Davis, supra,* 424 U.S. at 698, 96 S.Ct. 1155. Two important Supreme Court opinions that typify this category are *Wisconsin v. Constantineau, supra,* and *Paul v. Davis, supra.* In the former, the Court invalidated a statute authorizing the practice of posting—the written prohibition against sale or delivery of alcoholic beverages to certain persons deemed hazards—because it failed to provide for a hearing prior to posting. The Court stated that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau, supra,* 400 U.S. at 437, 91 S.Ct. at 510. The Court in *Paul* rejected the due process claim of an individual whose name and photograph were included in a publicly distributed flyer of active shoplifters after he had been arrested on a shoplifting charge that was subsequently dismissed. The *Paul* Court interpreted the statement in *Constantineau,* quoted above, as referring to the fact that the government had deprived the party in that case of a right previously held under state law—the unfettered right to purchase or obtain liquor. The Court therefore held that "reputation alone, apart from some more tangible interests such as employment, is [neither] 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due

---

of a nontenured state teacher's contract. Describing what the lawsuit did not involve, the Court stated that it would be "a different case" if "[t]he state, in declining to rehire the respondent, . . . [made] any charge against him that might seriously damage his standing and associations in his community." *Id.* at 573, 92 S.Ct. at 2707. After *Roth,* courts confronted with this "different case" held that the procedural protections guaranteed by the Constitution did apply to an employee who is dismissed for publicly disclosed reasons that are likely to affect his ability to take advantage of other employment. *See, e. g., Staton v. Mayes,* 552 F.2d 908 (10th Cir. 1977), *cert. denied,* 434 U.S.

907, 98 S.Ct. 309, 54 L.Ed.2d 195 (1978); *Colaizzi v. Walker,* 542 F.2d 969 (7th Cir. 1976), *cert. denied,* 430 U.S. 960, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977); *Huntley v. Community School Bd.,* 543 F.2d 979 (2d Cir. 1976), *cert. denied,* 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 773 (1977). In *Bishop v. Wood, supra,* the Court held that the employee's liberty interest was not impaired because the reasons for his dismissal were orally communicated to him in private and were not made public. The claim in *Codd v. Velger, supra,* was dismissed because the former employee failed to allege that the allegations against him were false.

Process Clause," *Paul v. Davis, supra,* 424 U.S. at 701, 96 S.Ct. at 1161. After reviewing a line of cases concerning governmental defamation and constitutional guarantees, the Court stated that it "has never held that the mere defamation of an individual, whether by branding him disloyal or otherwise, was sufficient to invoke the guarantees of procedural due process absent an accompanying loss of government employment." *Id.* at 706, 96 S.Ct. at 1163; *cf. Board of Curators of the University of Missouri v. Horowitz,* 435 U.S. 78, 84–85, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978) (assuming, arguendo, that a state university infringes a liberty interest when it dismisses a student without publicizing allegations harmful to the student's reputation). The Court's statement reflected its obvious concern that it was "hard to perceive any logical stopping place to . . . a line of reasoning" that embraced a broad and unqualified definition of the liberty interest violated by a government official's defamatory statements. *Paul v. Davis, supra,* 424 U.S. at 698–99, 96 S.Ct. at 1159.

Doe's claim is not beyond the "logical stopping place" established by the Supreme Court decisions concerning the constitutional prohibition against government defamation. Unlike *Paul,* this case does not involve "mere defamation" transmuted into a constitutional charge. And although the defamation alleged by Doe did not alter or extinguish a right or status previously recognized by state law, *see Paul v. Davis, supra,* 424 U.S. at 711, 96 S.Ct. 1155, the "government['s] action has operated to bestow a badge of disloyalty or infamy, *with an attendant foreclosure from other employment opportunity." Cafeteria Workers v. McElroy,* 367 U.S. 886, 898, 81 S.Ct. 1743, 1750, 6 L.Ed.2d 1230 (1961), quoted in *Paul v. Davis, supra,* 424 U.S. at 705, 96 S.Ct. 1155 (emphasis in original).[25] In contrast to the *Roth, Bishop, Codd* line of dismissal

cases, the defamatory statements challenged here were not made in the course of *terminating* plaintiff's employment. Instead, Doe claims that she was not *selected* for a fellowship position because of the defamatory statements related by the CSC—a claim supported, although not conclusively established, by the evidence presented. This factual distinction, however, does not render those decisions inapplicable to the circumstances present here. The parties in the dismissal cases, like Doe, have no legally cognizable property interest in the government job at stake. The *Codd* Court noted:

> Since . . . respondent had no Fourteenth Amendment property interest in continued employment, the adequacy or even the existence of reasons for failing to rehire him presents no federal constitutional question. Only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination is such a hearing required. *Roth, supra* ; *Bishop, supra.*

*Codd v. Velger, supra,* 429 U.S. at 628, 97 S.Ct. at 884 (footnote omitted).

 As in the dismissal cases, the merits of the Commission's employment decision do not raise a constitutional issue; Doe is not challenging that determination and this Court would not consider a direct review of the selection process per se. The constitutional issue that is raised both in Doe's suit and the *Roth, Bishop, Codd* line of cases concerns the procedures that must be followed when an individual is deprived of government employment and the allegedly defamatory grounds for the employment decision are disclosed in a manner that forecloses other job opportunities. Doe's suit should therefore be governed by the principle established by those cases—

---

**25.** This case therefore falls within the first category of cases described above in which a liberty interest is recognized notwithstanding the absence of a state-created right or status. Furthermore, Doe is challenging the conduct of a federal agency, and the Supreme Court's reliance on the "right recognized by state law"

standard may reflect, in part, a desire to preserve comity and reduce federal intervention in state and local affairs. *See Meachum v. Fano,* 427 U.S. 215, 224–25, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

that the liberty interest protected by the Due Process Clause prohibits the government from depriving an individual of government employment on the basis of false charges and then aggravating the injury, and further diminishing employment opportunities, by tarnishing the individual's name and reputation.

■ As noted above, the Supreme Court's decisions establish two prerequisites that must be satisfied to state a constitutional claim of government defamation. The plaintiff must allege that the charges are false and that they were publicly disseminated. Doe's claim clearly meets the first requirement; the second is more troublesome.[26] Doe has alleged that the charges against her were publicly disclosed in a damaging fashion. *Cf. Longarzo v. Anker*, 578 F.2d 469, 472 (2d Cir. 1978) (complaint dismissed where plaintiff failed to allege that allegations were publicized). While the Supreme Court and lower court opinions speak in terms of public disclosure, the term is not self-defining and may vary with the circumstances present in a particular case. *See McGhee v. Draper*, 564 F.2d 902, 910 (10th Cir. 1977). Because the Court is seeking to prevent the frustration of future job opportunities, any disclosure should be viewed in light of its impact on potential employment. *See Cafeteria Workers v. McElroy, supra*, 424 U.S. at 898, 81 S.Ct. 1743.

The derogatory statements at issue here were not disseminated to the public at large, and it is unclear whether the disclosure to the Fellowship Commission is, in itself, sufficient to satisfy the publication requirement. In *Gentile v. Wallen*, 562 F.2d 193 (2d Cir. 1977), the Second Circuit rejected the argument that a derogatory statement concerning a dismissed teacher that was made by the school board treasurer to the State Division of Employment constituted a "stigmatization." According to the court, "it may be that no publication was involved—only a confidential communication with an authorized governmental agency."[27] *Id.* at 198. In contrast to *Gentile*, the government body receiving the derogatory information about Doe was not a state revenue office that constantly processes job termination data, but a presidential commission composed of apparently influential citizens who hold various positions across the country. Furthermore, Doe's claim does not rest solely on one incident of disclosure to a governmental unit. The communication to the Fellowship Commission was memorialized in an official CSC report that could be relied upon by the Commission or another federal agency in the event that Doe reapplies for a fellowship or seeks another high level government position, as she has stated she intends to do. In contrast to *Bishop v. Wood, supra*, the derogatory charges were not merely communicated orally to the plaintiff.

**26.** Although the derogatory statements were originally made by the two third-party sources, the comments were related to the Fellowship Commission by the CSC. It is well established that "[e]very repetition of the defamation is a publication in itself, even though the repeater states the source." Prosser, Law of Torts § 113, at 768 (4th ed. 1971). As noted by Professor Prosser, "[t]he courts have said many times that the last utterance may do no less harm than the first, and that the wrong of another cannot serve as an excuse to the defendant." *Id.; see, e. g., Olinger v. American Savings and Loan Ass'n*, 133 U.S.App.D.C. 107, 109, 409 F.2d 142, 144 (D.C.Cir.1969) ("The law affords no protection to those who couch their libel in the form of reports or repetition. In the first place repetition of a defamatory statement is a publication in itself, regardless whether the repeater names the source."). These defend-ants have not attempted to rely on the "wrong of another" as a defense.

**27.** The court also stated that "in any event the communication occurred after appellant was terminated and hence, in the absence of an employment relationship, amounted to at most the type of simple defamation that the Supreme Court held not to trigger due process rights in *Paul v. Davis, supra*, 424 U.S. at 701–10, 96 S.Ct. 1155." *Id.* Similarly, in the case at hand, Doe was not employed by the government at the time the alleged defamation occurred. The *Gentile* court, however, was not addressing the circumstances present here; the lack of a current employment contract should not automatically bring the case within the rule of *Paul v. Davis*. As discussed above, the defamation alleged here occurred in the course of a clandestine employment decision and may foreclose other employment opportunities.

The substantial impact of an official written record was emphasized by the Second Circuit in *Velger v. Cawley*, 525 F.2d 334 (2d Cir. 1975), *rev'd on other grounds sub nom. Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (per curiam). Holding that the charges entered in the personnel file of a dismissed policeman constituted a stigma of constitutional proportion, the court stated that "New York City . . . grants ready access to its confidential personnel files to all governmental police agencies," and "the manner in which the personnel records are made available . . . insures that serious derogatory information in the file will stigmatize the dischargee." *Id.* at 336–37. Although the potential for broad disclosure may have been greater in *Velger* than in the case at bar, the disclosure risked here is sufficient to create a stigma triggering due process protections.[28]

In *McGhee v. Draper, supra,* the school board's public resolution concerning the plaintiff's dismissal did not include any charges levelled against her, but the board's private minutes and documents described the allegations. Noting that "the danger of future disclosure damaging to employment

possibilities . . . must be considered," the Tenth Circuit stated that "the circumstances here present a fact question whether the board's actions in effect created and disseminated an allegedly false impression about the plaintiff." *Id.* at 910 n.6. The court thus held that "it was error to direct a verdict against the plaintiff for the absence of proof of a liberty interest." *Id.* at 910. Similarly, in *Doe v. Anker*, 451 F.Supp. 241 (S.D.N.Y.1978), the publication requirement was held to be satisfied by the disclosure of a school board's report of mental unfitness to the plaintiff's physician. This Court agrees with the statement in that case that "courts should relax the rigid publication requirement when the content of the allegedly false finding and the manner in which it is preserved creates a great potential for damaging disclosure—especially where the relief requested is a hearing to confront the allegations." *Id.* at 252 n.18. Accordingly, the Court concludes that the charges against Doe were disclosed and recorded in a manner sufficiently threatening to her reputation and future employment opportunities to have infringed the liberty interest protected by the Due Process Clause.[29]

**28.** The *Velger* court stated that the city's practice of providing the personnel files to all governmental police agencies "could have the effect of closing the public sector to the probationary police dischargee and depriving him of employment in the largest and most desirable segment of his profession." *Id.* at 336. According to the court, the same result was true for the private sector because the city "answers all inquiries for permission to see personnel files with the suggestion that inspection will be permitted with the consent of the dischargee." *Id.* The Second Circuit subsequently noted that "[h]ad the information been restricted for use in internal decisionmaking, i. e., deciding whether to discharge the probationary policeman, . . . no [due process] hearing was required." *Williams v. Ward*, 556 F.2d 1143, 1162 (2d Cir. 1977). Under the Privacy Act, as in *Velger*, an agency's report may be disclosed upon the consent of the individual to whom it pertains. 5 U.S.C. § 552a(b). Furthermore, administrative records are available to employees and officers of the agency maintaining the records, *id.* at § 552a(b)(1), and may be disclosed for a "routine use" which is defined as "the use of such record for a purpose which is compatible with the purpose for

which it was collected," *id.* at § 552a(a)(7), (b)(3). The CSC has stated that Doe's file would be released if she applies for certain high level positions in the federal government. Defendants' Memorandum I at 27. Even if the file could be released only to government agencies or officials, such disclosure, like the practice involved in *Velger*, "could have the effect of closing the public sector" to this plaintiff. *See Austin v. Board of Educ.*, 562 F.2d 446, 450 (7th Cir. 1977) (question of fact regarding extent of public disclosure precludes summary judgment dismissing plaintiff's due process claims).

**29.** By ruling that the CSC's procedures violated Doe's right to due process, the Court is, in effect, granting her summary judgment with respect to her demand for a declaratory judgment. Although the CSC, not Doe, moved for summary judgment, it is well established that "[t]he trial court . . . ha[s] power on its own motion to enter summary judgment against the party who was the original mover." *Morrissey v. Curran*, 423 F.2d 393, 399 (2d Cir.), *cert. denied*, 399 U.S. 928, 91 S.Ct. 2245, 26 L.Ed.2d 796, *cert. denied sub nom. Segal v. Morrissey*, 400 U.S. 826, 91 S.Ct. 52, 27 L.Ed.2d 56 (1970), *cert. denied*, 414 U.S. 1128, 94 S.Ct.

When a plaintiff's stigmatization claim establishes a deprivation of liberty, "the remedy mandated by the Due Process Clause . . . is 'an opportunity to refute the charge.'" *Codd v. Velger, supra*, 429 U.S. at 627, 97 S.Ct. at 883–884, *quoting Board of Regents v. Roth, supra*, 408 U.S. at 573, 92 S.Ct. 2701. "The purpose of such notice and hearing is to provide the person an opportunity to clear his name." *Board of Regents v. Roth, supra*, 408 U.S. at 573 n.12, 92 S.Ct. at 2707 n.12. Therefore, subject to the conditions described below in Part IV, the CSC must provide Doe with an opportunity to rebut the allegations against her and clear her name. *See Moore v. Knowles*, 482 F.2d 1069, 1974 (5th Cir. 1973); *Doe v. Anker, supra*, 451 F.Supp. at 253.

The constitutional violation that this remedial "hearing" seeks to redress occurred when the CSC officially recorded and disclosed the allegations about Doe without first giving her notice and an opportunity to be heard. *See Huntley v. Community School Bd.*, 543 F.2d 979, 986 (2d Cir. 1976). "If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented." *Fuentes v. Shevin*, 407 U.S. 67, 81, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972). This basic principle has been applied in numerous cases to protect a variety of interests. *See, e. g., Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (loss of state university teaching position); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (termination of parole); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (removing unwed father's custody over his children); *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (suspending driver's license).

In *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), the Supreme Court declared:

> our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the

865, 38 L.Ed.2d 752 (1974); *see Petroleo Brasileiro, S. A., Petrobras v. Ameropan Oil Corp.*, 372 F.Supp. 503, 508 n.22 (S.D.N.Y.1974); *LeMon v. Zelker*, 358 F.Supp. 554, 555 (S.D.N.Y.1972).

In accordance with Rule 56(c), the Court has examined the "pleadings, . . . answers to interrogatories, and admissions on file, together with the affidavits" submitted by the parties. The Court has also had the benefit of the statements submitted pursuant to Rule 9 of the General Rules of the United States District Courts for the Southern District of New York. In these affidavits, the party moving for summary judgment, the defendants here, state "the material facts as to which [they] conten[d] there is no genuine issue to be tried," and the party opposing the motion, Doe, describes "the material facts as to which [she] contend[s] that there exists a genuine issue to be tried." According to Rule 9, "[a]ll material facts set forth in the statements required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."

The Court recognizes that a constitutional question should not be decided on an inadequate factual basis, *Hurtado v. United States*, 410 U.S. 578, 587 n.8, 93 S.Ct. 1157, 35 L.Ed.2d 508 (1973); *Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and that summary judgment is inappropriate when conflicting inferences can be drawn from the facts. *Robertson v. Seidman & Seidman, supra*, 609 F.2d 583, at 591. In this case, however, the Court is satisfied that "the record is adequate for the constitutional question presented and there is no genuine issue of material fact." 6 Moore's Federal Practice ¶ 56.17(10), at 56–775 to 56–776 (2d ed. 1976); *see, e. g., Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971). While the affidavits and pleadings conflict on some points, none of these have dispositive significance in the Court's view of the case. *See Abrams v. Occidental Petroleum Corp.*, 450 F.2d 157, 166 (2d Cir. 1971), *aff'd sub nom. Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973).

function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

(Citation omitted). Applying this formula, the Court has upheld governmental procedures denying hearings before the deprivation occurs when alternative procedures are deemed adequate to protect the personal interest at stake. *See, e. g., Ingraham v. Wright, supra* (child may be subjected to corporal punishment in public school without prior hearing); *Mathews v. Eldridge, supra,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (upholding Social Security Administration's provision for notice and an opportunity to introduce rebutting evidence, but no evidentiary hearing, prior to termination of federal disability benefits); *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (upholding statutory procedure for dismissing Civil Service employees which provided for hearing after dismissal). In contrast to those cases, however, this action does not involve "a significant intrusion into an area of primary educational responsibility," *Ingraham v. Wright, supra,* 430 U.S. at 682, 97 S.Ct. at 1418, or the risk that efficiency of the civil service would be jeopardized by "[p]rolonged retention of a disruptive or otherwise unsatisfactory employee," *Arnett v. Kennedy, supra,* 416 U.S. at 168, 94 S.Ct. at 1651 (Powell, J., concurring), or a substantial government expense that "come[s] out of the pockets of the deserving." *Mathews v. Eldridge, supra,* 424 U.S. 348, 96 S.Ct. 909. The CSC has stated that "[i]f in the course of [a competitive service] investigation CSC learns derogatory information of such a nature that it considers the applicant unsuitable, it so advises the applicant and provides him or her with an opportunity to rebut the derogatory information," but for applicants in other categories, such as White House Fellows, the CSC merely conducts an investigation without providing notice and an opportunity to be heard. Defendants' Memorandum I at 4; *see* 5 C.F.R. § 731.302 (1977).[30] This is not a case, therefore, where the government's interest measured by the "fiscal and administrative burdens that the additional . . . procedural requirement would entail" outweighs the private interest injured by the government's actions in view of "the risk of an erroneous deprivation" and the "probable value . . . of additional or substitute procedural safeguards." *See Mathews v. Eldridge, supra,* 424 U.S. at 334–35, 96 S.Ct. at 903. When the information collected, reported, and disclosed by the CSC is sufficiently damaging to threaten the future employment opportunities of a non-competitive service applicant, such as Doe, the procedural protections already granted to the competitive service candidate are constitutionally required.

■■■ The violation of a constitutional guarantee does not automatically give rise to a constitutionally based cause of action. As stated by the Supreme Court in *Davis v. Passman, supra,* 442 U.S. at 242, 99 S.Ct. at 2275, "litigants who allege that their own constitutional rights have been violated, and who at the same time have no effective means other than the judiciary to enforce these rights, must be able to invoke the existing jurisdiction of the courts for the protection of their justiciable constitutional rights." Upon concluding that the congressional rule prohibiting sex discrimination by members of Congress was unenforceable, the Court asserted that Davis had "no ef-

30. The CSC contends that it is the responsibility of the agency requesting the investigation to advise the applicant of the derogatory information and to offer an opportunity for correction or amendment. Yet, in this case, the CSC was totally in charge of investigating and compiling a file on Doe, and this information was conveyed to the Fellowship Commission shortly before the final selections were made. The CSC could easily have followed its standard procedure and informed Doe of the allegations while there was still time for her to attempt a rebuttal. The requesting agency may be in the best position to know what derogatory information will make a candidate unsuitable. The CSC, however, should be able to ascertain the relatively infrequent cases where, because an allegation impugns a candidate's character so severely as to foreclose future employment opportunities, due process requires notice and a chance to be heard.

fective means other than the judiciary" to remedy the violation of her Fifth Amendment rights. The second line of inquiry thus suggested by the *Davis* Court is whether Doe has any other effective way to vindicate the alleged violation of her right to due process of law.

Like Davis, Doe cannot turn to the branch of the government with which the defendant is associated—the Executive office—for an effective resolution of this dispute. She has pursued her claim through the bureaucratic channels of the CSC but remains unsatisfied.

In determining whether alternative statutory remedies preclude a constitutional cause of action, this Court concludes that a *Bivens*-style claim against the CSC would be unnecessary to the extent that the equitable relief requested would be available under the APA. If her APA claim could not secure such relief, Doe should be able to pursue a constitutional cause of action. No statutory cause of action mirrors Doe's constitutional claim for damages against the named defendants in their individual capacities. Nor does the existence of a state tort claim prevent the implication of a constitutional cause of action. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, supra*, 403 U.S. at 390–92, 91 S.Ct. 1999. Furthermore, any Privacy Act damages awarded in this case would be limited to post-effective date injuries sustained by Doe, 5 U.S.C. § 552a(g)(5), and Doe concedes that sovereign immunity bars recovery against the CSC. The Court will therefore permit Doe to pursue a cause of action for damages against the individual defendants under the Fifth Amendment because she has no other means of securing total monetary relief in the event she establishes compensable losses.

The third and final inquiry undertaken by the *Davis* Court was to determine "whether a damages remedy [was] an appropriate form of relief" for the violation of Fifth Amendment rights alleged in that case. *Davis v. Passman, supra*, 442 U.S. at 245, 99 S.Ct. at 2276. The Court's determination was guided by several considera-

tions. Stating that "damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty," the Court noted that monetary relief would be "judicially manageable" because the case presented a "focused remedial issue without difficult questions of valuation or causation." *Id.* No explicit congressional declaration" counseled against awarding damages to a person subjected to the unconstitutional acts alleged. Nor did the Court foresee a deluge of claims if a damage remedy was made available to Davis. Finally, the Court acknowledged that a suit against a congressman raised "special concerns counselling hesitation." *Id.* at 246, 99 S.Ct. at 2277. Yet the Court held that "these concerns are coextensive with the protections afforded by the Speech or Debate Clause," and if the congressman's actions "are not shielded by the Clause," he should "'be bound by [the law] as [an] ordinary perso[n].'" *Id., quoting Gravel v. United States*, 408 U.S. 606, 615, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972). Concluding that "equitable relief in the form of reinstatement would be unavailing" because the respondent was no longer a congressman and that there were "available no other alternative forms of judicial relief," the Court held that Davis could "redress her injury in damages, a 'remedial mechanism normally available in the federal courts.'" *Id., quoting Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, supra*, 403 U.S. at 397, 91 S.Ct. 1999.

A lawsuit against senior CSC officials for acts committed in the performance of their normal duties, like a lawsuit against a congressman, raises "special concerns counselling hesitation." As in *Davis*, however, these concerns should be "coextensive" with the protections provided by the government officials' special privileges or immunities. The *Davis* Court did not decide whether the defendant's conduct in that case was shielded by the Speech and Debate Clause. Nor does this Court express any opinion as to whether the defendants here are protected from liability by an absolute or qualified official immunity.

This question, which requires applying the immunity standards recently described by the Supreme Court in *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), is premature, has not been briefed by the parties, and may involve an examination and resolution of several factual issues presented in the case.

 Doe, unlike Davis, can pursue alternative forms of nonmonetary relief and the injuries she alleges are not easily translated into dollar amounts. The *Davis* Court, however, did not hold that a damage remedy is appropriate only in the absence of any other form of relief. In fact, several of the circuit court cases approvingly cited by the Court in *Davis* have implied a cause of action under the Fifth Amendment for both equitable and monetary relief arising from the same claim. *See, e. g., Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978), *cert. pending sub nom. Moffit v. Loe*, No. 78–1260, 48 U.S.L.W. 3077 (U.S. Aug. 21, 1979); *Jacobson v. Tahoe Regional Planning Agency*, 566 F.2d 1353 (9th Cir. 1977), *rev'd in part, aff'd in part on other grounds sub nom. Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979); *Apton v. Wilson*, 165 U.S.App.D.C. 22, 506 F.2d 83 (D.C.Cir.1974). The "explicit congressional declaration" most pertinent to this issue, the Privacy Act, not only authorizes an award of actual damages for the type of willful and intentional conduct alleged here, but provides that "in no case shall a person entitled to recovery receive less than the sum of $1,000." 5 U.S.C. § 552a(g)(4)(A). Congress obviously thought that the appropriate amount of damages could be calculated in a "judicially manageable" fashion notwithstanding questions regarding valuation and causation. Allowing this claim would not open the oftdreaded floodgates of litigation; this case does not appear to involve a typical sequence of events and the fact that the claim relates in part to events occurring before the Privacy Act's effective date is an important factor favoring an implied remedy for damages under the Constitution. Accordingly, Doe may pursue her claim for monetary damages against the named defendants in their individual capacities.

In summary, the Court has concluded that Doe asserts a constitutionally protected right; that she has stated a cause of action, in part under the APA and in part implied from the Constitution, which asserts this right; and that equitable and monetary relief may be appropriate. In addition, the Court holds that the CSC unconstitutionally deprived Doe of a liberty interest by disclosing the allegations against her to the Fellowship Commission without affording her an opportunity to refute the charges. Finally, the Court directs the CSC to provide Doe with an opportunity to be heard, subject to the conditions described *infra*.

## IV. THE DISCOVERY ORDER

Doe initiated discovery in this lawsuit by serving the defendants with a first set of interrogatories that asked for the identities of the sources who provided the derogatory information against her and the identities of the CSC investigators who interviewed those sources. Her second set of interrogatories sought to ascertain, *inter alia*, the location of three named persons whose addresses were unknown to Doe (two were college classmates who lived in Doe's dormitory, and the third was the dormitory housemother at that time) and any other person, known to the defendants, who may have information bearing upon the accuracy of the derogatory allegations.

The defendants objected to answering the questions posed in these interrogatories. They contended that the identities of the two sources were protected by the informer's privilege. Furthermore, defendants argued, the information was exempt from disclosure under section (k)(5) of the Privacy Act which authorizes, in part, federal agencies to promulgate regulations exempting agency records from certain specified provisions of the Act—including the provisions authorizing access and amendment requests—if the record is:

investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment, military service, Federal contracts, or access to classified information, but only to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or, prior to the effective date of this section, under an implied promise that the identity of the source would be held in confidence.

Defendants acknowledge that this exemption did not directly shield the identities of the CSC investigators. They argued, however, that this information should not be disclosed because it was unnecessary and "the threat of vexacious litigation is particularly pronounced since plaintiff's counsel has already advised he's preparing to file a motion to amend the complaint to assert a claim under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics* . . directly against defendants Drummand [sic] and Biglin." Memorandum of Law in Opposition to Plaintiff's Motion to Compel Discovery at 15. Finally, defendants stated that a "wholesale rummaging" of its files would be necessary to answer Doe's request for addresses of the three named persons. Because "her need for the testimony of these three individuals is simply not great enough to overcome their right to remain 'unlocatable'," the defendants asserted that before such disclosure is ordered, "the Court must weigh their interest in privacy" and "the plaintiff should be required to show what serious efforts, if any, she has made to locate the three named individuals." *Id.* at 20.

▪ The plaintiff's motions to compel the defendants to answer her interrogatories were assigned to Magistrate Kent Sinclair, Jr., who held that Doe was entitled to all the information requested. In a carefully considered Memorandum Order, he ruled that, entirely apart from plaintiff's Privacy Act claim, her discovery requests were relevant to her APA and constitutional claims and the information was not privileged. The defendants appeal this order. Since the defendants have now withdrawn their objection to identifying the CSC investigators, Defendants' Memorandum I at 3, only two of the three requests challenged must be reviewed by this Court.

The Court affirms the Magistrate's ruling with respect to plaintiff's request for addresses of named and unnamed persons. On this issue, the Magistrate ruled that:

> defendants shall conduct a check via their principal name indices to determine whether an address may be located for the three individuals identified by plaintiff. Defendants shall not be required to identify persons [who may have information bearing upon the accuracy of the derogatory allegations] except those whom defendants intend to utilize as witnesses at trial and whose identities are not set out in the papers to date.

The Court reverses the Magistrate's Order insofar as it grants Doe the immediate right to discover the identities of the sources who made the derogatory statements against her.

The Magistrate's Order stated that the defendants must disclose the location of the three named individuals, if known, because "[t]he plaintiff's fellow students and dormitory housemother are clearly witnesses likely to have information bearing on the accuracy of the derogatory allegations." This information is relevant to the Court's de novo determination of Doe's request for an amendment of her CSC file. *See* Rule 26(a)(1); Fed.R.Evid. 401. The addresses of these individuals are not exempt from disclosure under section (k)(5) of the Privacy Act because they did not serve as confidential sources and the plaintiff already knows their identity. Plaintiff and her counsel have informed the Court that they have tried unsuccessfully to obtain these addresses through alternative means. Affidavit of Jack D. Novik, sworn to October 25, 1978. The Court is satisfied that the Magistrate's Order is framed in a manner that will not make compliance unduly burdensome.

The defendants contend that the identities of the sources who made the derogatory statements about Doe are protected by the Privacy Act's statutory exemption. According to the defendants, "[i]t is difficult to imagine a case more squarely within the (k)(5) exemption than the instant one," Defendants' Memorandum I at 12a, because the sources provided information used to determine Doe's suitability for federal employment and their "refusal to authorize the release of their names . . . clearly demonstrates that actual or implied pledges of confidentiality were given." [31] Memorandum in Opposition to Plaintiff's Motion to Compel Discovery at 15. Doe, in turn, argues that the plain terms of the statute, as well as the legislative history, demonstrate that the (k)(5) exemption was not intended to protect the identities of these sources. Recognizing that neither the statutory language nor legislative history of the Privacy Act is crystal clear, the Court rejects the plaintiff's interpretation and concludes that the source's identities are exempt from disclosure under section (k)(5).

Section (k), which lists the specific exemptions to the Act, states that "any agency may promulgate rules . . . to exempt any system of records within the agency from subsections (c)(3), (d), (e)(1), (e)(4)(G), (H), and (I) and (f)." [32] Doe argues that, under the terms of the statute, the (k)(5) exemption cannot be invoked in an action for de novo review pursuant to section (g), which provides for civil remedies to enforce the Act. Acknowledging that courts have withheld a source's identity when a person brings an action seeking *access* to his records, Doe argues that her case is distinguishable because the accuracy of the record is at issue and the sources must be questioned to ascertain the relevant facts. To support this contention, she relies on a section of the Analysis of House and Senate Compromise Amendments to the Federal Privacy Act, which states, in part:

> Furthermore, the acceptance of this section in no way precludes an individual from knowing the substance and source of confidential information, should that information be used to deny him a promotion in a government job or access to classified information or some other right, benefit or privilege for which he was entitled, otherwise if he should consequently bring legal action against the government and should base any part of its legal case on that information.

93d Cong., 2d Sess., 120 Cong.Rec. 40881 (1974).

As the defendants properly point out, the quoted statement does not govern the case at bar. Doe herself has conceded that she had no legally cognizable property interest in a White House Fellowship, Plaintiff's Memorandum at 26, and she is not asking the Court to award her a position as part of her relief. Her case is therefore distinguishable from the situation contemplated by Congress. *See id.* at 40884–85 (congressional discussion of hypothetical case where federal employee sues for rightful promotion, and government has no valid reason for denying it apart from allegedly erroneous information in employee's record).

Doe's argument that the (k)(5) exemption does not apply to a civil action brought pursuant to section (g) is soundly countered by judicial decisions recognizing the applicability of the confidentiality exemption to suits seeking access to agency records. *See, e. g., Kawalek v. United States Civil Service Commission,* 78 Civ. 247 (E.D.N.Y. July 5, 1978); *Nemetz v. Dep't of Treasury,* 446 F.Supp. 102 (N.D.Ill.1978); *Mervin v. Bonfanti,* 410 F.Supp. 1205 (D.D. C.1976). Access suits, like actions seeking de novo review of amendment requests, are initiated pursuant to section (g), the civil

---

**31.** Because the investigation was conducted prior to the effective date of the Privacy Act, only an implied promise of confidentiality is required to invoke the exemption. 5 U.S.C. § 552a(k)(5). The Court accepts defendants' assertion, unchallenged by the plaintiff, that these sources were promised that their names would not be disclosed.

**32.** The regulations issued by the CSC pursuant to section (k)(5) are found at 5 C.F.R. § 297.-117(b)(1)(iii) (1977).

remedies provision, and section (d), which is clearly subject to the (k)(5) exemption and authorizes an individual to request both access to, and amendment of, his agency file. As stated by the defendants, if the exemption is inapplicable to actions seeking de novo review, "[it] would be meaningless; to escape its strictures a requestor would need only commence a lawsuit alleging improper denial of a request for amendment and claim that the identity of the source was imperative to refute the record's inaccuracy." Reply Memorandum II at 12.

 In attempting to distinguish access suits from actions seeking de novo review of an amendment request, Doe contends that in the latter case the plaintiff must have an "opportunity to meet and confront the persons making derogatory allegations—to test and confront their recollections, to challenge their credibility, to expose their prejudices—[or else] the court cannot make a fair determination of whether those charges are accurate." Plaintiff's Memorandum at 46. This statement, however, reveals the false premise on which Doe's argument rests. In exercising de novo review, the Court should not try the facts underlying the theft allegations or render a decision declaring Doe innocent or guilty of the charges. The CSC has not accused Doe of committing a crime and the agency has no reason to press these claims in court; the requisite adversity between the parties would be sorely lacking. The CSC, however, does have cause to defend its decision to retain investigative reports describing allegedly false statements made by people it chose to interview. The Court's de novo review should be limited to an independent determination whether Doe's amendment request should be denied on the basis of the evidence that was available to the agency and any supplemental evidence presented to the Court. Cf. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (de novo review under APA involves "independent judicial factfinding"); *Rizzo v. Tyler*, 438 F.Supp. 895, 899 (S.D.N.Y.1977) (de novo review of agency ruling under Freedom of Information Act includes considera-tion of additional evidence); *Metropolitan Life Ins. Co. v. Usery*, 426 F.Supp. 150, 156 (D.D.C.1976) (court "not confined to reviewing the agency record" in determining whether Freedom of Information Act exemption applies; court is limited to record in deciding whether agency abused its discretion). The Court does not intend to sit as trier of fact while the plaintiff cross-examines the two sources who spoke against her. Contrary to Doe's assertion, this is not the judicial hearing contemplated by the Privacy Act. Accordingly, the (k)(5) confidentiality exemption can and does apply to this action seeking de novo review of an amendment request.

The Magistrate's Order did not reach the question of whether the sources' identities were protected by the (k)(5) exemption. Stating that the statutory exemption "applies only to Privacy Act disclosure burdens," the Magistrate concluded that this information was discoverable pursuant to Doe's APA and constitutional claims. This ruling did not "intimat[e] any judgment as to the ultimate viability" of these claims, and they were accorded "the dignity normally afforded to pending issues." In contrast to the Magistrate, who noted that he need not decide "untested issues of first impression," this Court has grappled with and resolved, in part, Doe's non-Privacy Act claims. From this perspective, the proper scope of those claims, and the precise issues to be next decided by this Court, are more clearly in view. Because the Court concludes that it will not now conduct a trial on the charges made against Doe, disclosure of the sources' identities is not "essential to a fair determination of the issues in the case." *In re United States*, 565 F.2d 19, 22–23 (2d Cir. 1977), *cert. denied*, 436 U.S. 962, 98 S.Ct. 3082, 57 L.Ed.2d 1129 (1978) ("Where the identification of an informer . . . is essential to a fair determination of the issues in the case, the [informer's] privilege cannot be invoked.").

 The defendants, arguing that the source's identities are protected by the informer's privilege, state that "there is a

critical need for CSC to be able to guarantee the persons whom it consults 'in the course of an employment investigation that their identities will not be made known to the subject of the investigation." Defendants' Memorandum I at 26–27. The doctrine of informer privilege applies in civil as well as criminal cases and may be asserted when it appears that the informant will be the target of retaliatory actions by the person who is the subject of the information. *Id.* at 22; *Wirtz v. Continental Finance & Loan Co.*, 326 F.2d 561, 563 (5th Cir. 1964). The threat of "physical reprisal" is not required, for "retaliation may be expected to take more subtle forms such as economic duress, blacklisting or social ostracism." *In re United States, supra*, 565 F.2d at 22.[33] The party seeking discovery carries the burden of establishing that the need for disclosure outweighs the public interest in maintaining the free flow of information from confidential sources. *Kerr v. United States District Court*, 426 U.S. 394, 405, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976); *United States v. Prueitt*, 540 F.2d 995, 1004 (9th Cir. 1976), cert. denied, 429 U.S. 1063, 97 S.Ct. 790, 50 L.Ed.2d 780 (1977).

Doe's need for disclosure could outweigh the interests protected by the privilege if the question whether the allegations are true were now to be decided by this Court. Yet, as noted above, de novo review of Doe's Privacy Act amendment request does not require a trial on the charges or a final judgment on her guilt or innocence. Furthermore, the Court has concluded that the CSC's investigatory and disclosure procedures violated Doe's due process rights and has ordered the agency to provide her with an opportunity to refute the charges. Therefore, the agency, not the Court, will first be examining the validity of the charges. The ultimate truth or falsity of

the allegations is not a question directly before this Court; disclosure of the sources' identities is therefore not critical to a fair determination of the remaining issues.[34]

Doe has, in fact, already presented the CSC with her rebuttal to the charges in the course of pursuing her amendment request. An administrative hearing on Doe's claim would therefore be essentially a review of reports, letters, and affidavits that the CSC has already examined; the agency, of course, is free to reverse its initial decision on the matter. This opportunity to be heard— "the remedy mandated by the Due Process Clause," *Codd v. Velger, supra*, 429 U.S. at 627, 97 S.Ct. at 883—will not, however, necessarily be merely an instant replay of the administrative review procedures prompted by Doe's original amendment request. Notwithstanding its settlement offer, if the CSC refuses to remove the derogatory reports from Doe's file and to concede that their probative value is outweighed by the other investigatory reports and the statements submitted by Doe, then the agency must permit Doe to confront and question the sources who made the allegations against her.

The right to confront and cross-examine witnesses applies to administrative proceedings where an interest protected by the Due Process Clause is at stake. *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Willner v. Committee on Character and Fitness*, 373 U.S. 96, 104–05, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963).

> An accuser who whispers his charges to an FBI investigator may be motivated by malice or mistake, and the investigator, having access to only a part of the facts, may be unable to detect the infirmity. The accused, having the advantage of knowing the truth, may be able at once to

---

**33.** The Court is satisfied that there is no risk that the sources would be subject to any physical retaliation by Doe. While it is possible that Doe could institute an action for defamation, the sources may be protected by a qualified privilege covering "communications to one who may act in the public interest." Prosser, Law of Torts § 112, at 791 (1971).

**34.** While this question does bear on Doe's suit against the individual defendants, resolution of other issues (*i. e.*, immunity, intent, damages) may preclude this inquiry. It would be premature and speculative to order disclosure at this time for the purposes of that suit. *See In re United States, supra*, 565 F.2d at 23–24.

expose the falsehood or distortion. For a full hearing, the accused must have a chance to know the identity of the accuser, to see and hear him testify, and he must have a chance to explain, to submit rebuttal evidence and argument, and to cross-examine.

Davis, Administrative Law Treatise § 12:9, at 444 (1979). Although the CSC did not render a judgment on Doe's guilt or innocence, it did convey "publications" of possibly "unfounded designations" that "so to harm the reputation of another as to lower [her] in the estimation of the community or to deter third persons from associating or dealing with [her]." *Joint Anti-Fascist Refugee Committee v. McGrath, supra*, 341 U.S. at 139, 71 S.Ct. at 632; *see Greene v. McElroy*, 360 U.S. 474, 496, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1958). To successfully defend its decision to include the derogatory reports in her file, in the face of overwhelming contrary evidence, the CSC must allow Doe to confront and question the sources in an administrative hearing. *See Goldberg v. Kelly*, 397 U.S. 254, 268, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Bunker Hill Co. v. Environmental Protection Agency*, 572 F.2d 1286, 1305 (9th Cir. 1977); *Doe v. Anker, supra*, 451 F.Supp. at 253. If the agency views these reports as sufficiently credible to be incorporated into an official government file, then the sources' credibility is a critical issue on which Doe must have the opportunity to be heard. *See Thompson v. Washington*, 162 U.S.App.D.C. 39, 54 n.48, 497 F.2d 626, 641 n.48 (D.C.Cir.1973); *Dick v. United States*, 339 F.Supp. 1231, 1234 (D.D.C.1972). Her substantial need to question these sources before the agency would override any privilege that inhibits disclosure of their identities. *See In re United States, supra*, 565 F.2d at 22–23; *Stephens Produce Co. v. NLRB*, 515 F.2d 1373, 1377 (8th Cir. 1975); *cf. Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968) (Sixth Amendment requires that name and address of principal prosecution witness be revealed so that defendant can conduct effective cross-examination); *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) (disclosure of informant's identity ordered pursuant to Court's supervisory judicial powers). Of course this is not a criminal case and the CSC itself has made no charges against Doe that would have to be dropped unless the sources are revealed. However, in light of the significance and weight of the countervailing evidence, the agency, upon reviewing Doe's claim, cannot affirm its decision to include the derogatory reports unless Doe has an opportunity to cross-examine the sources of the allegations at a CSC hearing. *See International Union v. NLRB*, 148 U.S.App. D.C. 305, 312–317, 459 F.2d 1329, 1336–41 (D.C.Cir.1972) (agency must apply adverse inference rule that party's failure to produce evidence within its control creates a presumption that evidence would be unfavorable to that party in order to ensure fair hearing for other party seeking evidence); *Escalera v. New York Hous. Auth.*, 425 F.2d 853, 862 (2d Cir. 1972) (agency's decision to terminate tenancy cannot rely on undisclosed information provided by undisclosed sources not subject to cross-examination); *Ashworth Transfer, Inc. v. United States*, 315 F.Supp. 199, 203 (D.Utah 1970) (party must challenge validity of sworn statements to be entitled to cross-examination at agency hearing). If the agency concludes that the letters and affidavits submitted by Doe cast sufficient doubt on the veracity of the derogatory reports to warrant their exclusion from the CSC file, then the sources need not be subject to cross-examination. The decision, therefore, lies with the agency.

## CONCLUSION

In arguing that this case should be dismissed as moot, the defendants stated that "[e]ven if the plaintiff were to prevail in her challenge to the investigatory procedures and record-keeping practices followed in this case, the likelihood of the Court entering the sweeping relief the plaintiff apparently seeks is most unlikely, we respectfully submit, in light of its effect on other federal agencies not party to this action which use CSC to conduct employment investigations." Reply Memorandum

I at 6. The Court, however, does not view the relief ordered here, or any other relief that may be forthcoming, as "sweeping" or as necessarily affecting other agencies. Defendants acknowledge that "[h]ad the full field investigation been undertaken at CSC's own request, it would have notified her of the derogatory information." *Id.* The Court is now ruling that this standard procedure should have been followed under the circumstances of this case, where the derogatory information—which was incorporated into an official government report that could be rereleased even though it was substantially controverted by other evidence—seriously impugned the moral character, and therefore threatened the future federal employment opportunities, of the applicant. The hearing that the Court has ordered the CSC to conduct, which will provide Doe with an opportunity to refute the charges, is the "remedy mandated" for a due process violation. The disclosure required at this hearing is keyed to what the CSC chooses to do. If the agency wants to include the derogatory reports in Doe's file, she must have a chance to question the sources and challenge their credibility. If the agency wants to protect the sources, it must, in light of the countervailing evidence and in fairness to Doe, concede that the veracity of the reports is too questionable to be included in Doe's file, and notify the Commission of this determination if Doe so desires. The agency should proceed in this matter notwithstanding Doe's pending Privacy Act claim.

In conclusion, after determining that this action is not moot, the Court has reviewed the extensive statutory, constitutional, and evidentiary arguments made by the parties. The Court has concluded that Doe has stated a claim under the Privacy Act and has a constitutionally based cause of action against the named defendants in their individual capacities. The Court has also found that the CSC's investigatory and disclosure procedures violated Doe's right to due process and has ordered the agency to provide Doe with an opportunity to refute the allegations, with appropriate discovery if necessary.

So ordered.